983 P.2d 608 (1999)
139 Wash.2d 20
STATE of Washington, Petitioner,
v.
Natalie BROWN, Respondent.
No. 67024-2.
Supreme Court of Washington, En Banc.
Argued January 27, 1998.
Decided September 9, 1999.
*609 Norm Maleng, King County Prosecutor, Lee D. Yates, Deputy, Seattle, for Petitioner.
Allen, Hansen, & Maybrown, Richard A. Hansen, Seattle, for Respondent.
*610 IRELAND, J.
This case involves a determination of (1) whether the trial judge abused his discretion in concluding the jurors did not engage in misconduct by using a trial exhibit to reenact the crime charged, and (2) whether a sentencing court can impose an exceptional sentence downward below the time specified under RCW 9.94A.310(4) for a deadly weapon enhancement. We conclude the trial judge did not abuse his discretion by refusing to grant a new trial when the jurors used a trial exhibit to reenact the crime charged. We further conclude that the "Hard Time for Armed Crime" initiative, codified in RCW 9.94A.310(4), deprives a sentencing court of discretion to impose an exceptional sentence downward below the time specified for a mandatory deadly weapon enhancement. We remand to the superior court for re-sentencing consistent with this decision.

FACTS
On March 27, 1996, the Defendant, Natalie Brown, went to Titan Cox's home, believing Cox had sent an angry message to her friend's pager. Among a group of people gathered at Cox's home for a barbecue, Brown confronted Cox and asked if they were still friends. Cox apparently walked away, lit a cigarette and, when Brown pursued him, blew cigarette smoke in her face. Brown claimed she became confused and feared for her safety because Cox was "a big guy," who "always carried [knives]." Brown testified Cox "had that annoyed look, and then I saw him roll his shoulder back like he was about to throw a punch." Report of Proceedings (RP) at 414. Brown said that as Cox punched her in the shoulder, she reached into her coat pocket, quickly grasped and opened a folding knife, and then cut Cox across the nose in self-defense. Cox denied hitting Brown or being aggressive. He testified that Brown suddenly grabbed him without provocation and cut his face, which has resulted in permanent scarring.
At trial, Cox used his coat to demonstrate how Brown attacked him. During cross-examination, Brown's attorney and Cox reenacted the assault. When Brown took the witness stand, she also demonstrated how the assault had occurred. While the coat Brown wore on the night of the incident was not offered into evidence, Cox testified his coat was the same type of trench coat worn by Brown. Brown's testimony also described her trench coat as "matching." RP, Vol. II, at 400.
On November 19, 1996, the jury convicted Brown of second degree assault with a deadly weapon. Before sentencing, Brown moved for a new trial. Basing her motion on a juror's affidavit, Brown argued the jurors conducted an improper experiment by wearing Cox's coat, a trial exhibit, to test the difficulty of pulling Brown's knife out of the coat pocket and opening it as Brown had testified.[1] The trial court reviewed the parties' written submissions and denied Brown's motion. It reasoned that no new extrinsic evidence was introduced during the jury's deliberations.
The presumptive standard sentence range for Brown's assault conviction was three to nine months. The sentencing court added a 12-month deadly weapon enhancement pursuant to RCW 9.94A.310(4)(b), to arrive at a total standard range of 15 to 21 months. The sentencing court, granting the jury's unanimous request for leniency, imposed an exceptional sentence downward of seven months.
The State appeals the trial court's imposition of an exceptional sentence below the applicable 12-month deadly weapons enhancement. In her response, Brown cross-appeals the trial court's denial of her motion for a new trial based on jury misconduct.

ANALYSIS
A. Jury Misconduct
A trial court's refusal to grant a new trial is reviewed for abuse of discretion. State v. Balisok, 123 Wash.2d 114, 117, 866 P.2d 631 (1994).
The State argues Brown failed to make a sufficient record to review this issue on appeal because the juror's affidavit was *611 never submitted to the trial court. It also argues the jury's reenactment was proper because no new evidence was created or introduced. While the juror's affidavit is missing from the record, it appears the defense produced it for the trial court. This is evidenced by the State's silence when defense counsel said to the trial judge, "The affidavit for Mr. Newell was presented to the court. I trust the court's received that." RP at Defense Mot. and Sentencing, Vol. II, at 2. In order to consider the merits of her argument, Brown's version of the events are accepted.
A new trial may be warranted when a jury considers information other than the evidence admitted at trial. See Balisok, 123 Wash.2d at 118, 866 P.2d 631. While a jury may use exhibits admitted in evidence to critically examine a defendant's version of the events under a claim of self-defense, it may not rely on novel or extrinsic evidence, which is not subject to objection, cross examination, explanation, or rebuttal. Balisok, 123 Wash.2d at 118-19, 866 P.2d 631.
In this case, the coat and knife used by the jury to reenact Brown's story were admitted as trial exhibits. Although the coat belonged to Cox, the evidence established Brown wore a similar coat. At trial, Brown's attorney and Cox reenacted the assault by using Cox's coat to demonstrate how Brown assaulted him. When Brown took the witness stand, she also used Cox's coat to demonstrate the assault.
Brown has failed to establish misconduct. She concedes that if her coat had been introduced into evidence, the jury could have used it to conduct the experiment. Although Cox's coat may have been larger than Brown's, jurors are presumed to use their common sense and reasoning powers to compensate for this variable. See Balisok, 123 Wash.2d at 119, 866 P.2d 631 (jury's simulation of self-defense claim was not misconduct merely because the juror simulating the defendant's actions did not match the defendant's proportions). The jurors' reenactment was simply a critical examination of Brown's self-defense theory with evidence already admitted at trial. The trial judge did not abuse his discretion by denying Brown's motion for a new trial. Accordingly, Brown's conviction is affirmed.
B. The Exceptional Sentence Below the Mandatory Deadly Weapon Enhancement
"Interpretation of a statute is a question of law reviewed by an appellate court de novo." In re Post Sentencing Review of Charles, 135 Wash.2d 239, 245, 955 P.2d 798 (1998).
Prior to Sentencing Reform Act of 1981(SRA) amendments in 1995, a sentencing court's discretion for a felony conviction was primarily governed by RCW 9.94A.120. This statute requires a sentencing court to impose a sentence within the offense's sentencing range. RCW 9.94A.120(1). However, "[a] court may impose a sentence outside the standard sentence range for that offense if it finds ... there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). While various offenses are excluded from exceptional sentence eligibility, second degree assault, a class B felony and the offense at issue in this case, is not among those excluded offenses. RCW 9.94A.120(4).
In 1995, the Legislature enacted, without amendment, Initiative 159, entitled "Hard Time for Armed Crime." Laws of 1995, ch. 129; In re Charles, 135 Wash.2d at 246, 955 P.2d 798 (citing State v. Broadaway, 133 Wash.2d 118, 124, 942 P.2d 363 (1997)). Initiative 159 "split the previous deadly weapon enhancement into separate enhancements for firearms and for other deadly weapons, and broadened their application to all felonies except those in which using a firearm is an element of the offense." Washington Sentencing Guidelines Comm'n, Adult Sentencing Guidelines Manual cmt. at II-67 (1997). Although Initiative 159 did not amend RCW 9.94A.120, its purpose was to "increase sentences for armed crime." In re Charles, 135 Wash.2d at 246, 955 P.2d 798 (citing Broadaway, 133 Wash.2d at 128, 942 P.2d 363). This new law thus increases the sentence enhancement for an offender found to have been armed with a firearm or deadly weapon during the commission of the offense. In re Charles, 135 Wash.2d at 246, 955 P.2d 798.
*612 The SRA provides that a presumptive sentence range is based on a defendant's offender score and the seriousness level of the offense. RCW 9.94A.310(1). When a jury makes a special finding that a felony offender was armed with a deadly weapon, certain "additional times shall be added to the presumptive sentence[.]" RCW 9.94A.310(4). See In re Charles, 135 Wash.2d at 253-54, 955 P.2d 798. Initiative 159's amendments to the SRA provide that 12 months shall be added to the presumptive sentence for felony crimes if the offender was armed with a deadly weapon and the felony was defined under any law as a class B felony. RCW 9.94A.310(4). Former RCW 9.94A.310(4)(e)[2] also provided:

Notwithstanding any other provision of law, any and all deadly weapon enhancements under this section are mandatory, shall be served in total confinement, and shall not run concurrently with any other sentencing provisions.
(Emphasis added.)
The State, relying on the absolute language of RCW 9.94A.310(4)(e), argues Brown's 12-month deadly weapon enhancement is a mandatory minimum punishment from which the sentencing court has no discretion to deviate. Brown responds that enhancements are added to and become part of the presumptive sentence range, from which the court has discretion to depart for compelling reasons under RCW 9.94A.120(2). Thus, Brown suggests that once the total range is calculated, given sufficient justification, the court can deviate from the sentencing range without limitation. Brown relies on In re Charles to support this proposition.
In re Charles consolidated two criminal cases involving the computation of the length of sentences under the Hard Time for Armed Crime initiative. In In re Charles, both defendants faced multiple convictions, each carrying firearm enhancements. Under the Hard Time for Armed Crime initiative, former RCW 9.94A.310(3)(e)[3] required that "[n]otwithstanding any other provision of law, any and all firearm enhancements ... shall not run concurrently with any other sentencing provisions." This directive requiring firearm enhancements to run consecutively "has a different result depending on whether the term `other sentencing provisions' is read to mean other sentencing provisions of the SRA or other sentencing provisions of the particular defendant's sentence." In re Charles, 135 Wash.2d at 250, 955 P.2d 798. Absent any legislative intent serving to clarify this ambiguity, this court applied the rule of lenity to favor the defendants' interpretation. In re Charles, 135 Wash.2d at 253-54, 955 P.2d 798. Accordingly, this court utilized RCW 9.94A.400 to determine whether the defendants' enhancements should be served concurrently or consecutively, despite RCW 9.94A.310(3)(e)'s directive that firearm sentence enhancements shall only run consecutively. In re Charles, 135 Wash.2d at 254, 955 P.2d 798.
Brown, relying on In re Charles, asserts that enhancements under RCW 9.94A.310(4)(e) are not immune from modification by other provisions of the SRA, namely RCW 9.94A.120's exceptional sentence provisions. In other words, Brown claims the "notwithstanding" language present in RCW 9.94A.310(4)(e) cannot be construed as an absolute prohibition against discretionary downward departures for deadly weapon sentence enhancements.
In re Charles is not controlling. In re Charles addresses whether firearm enhancements run consecutive to each other or whether they are consecutive to the base sentence but concurrent to each other when multiple offenses each carry deadly weapon enhancements and the sentences for each are imposed concurrently. In re Charles, 135 Wash.2d at 245, 955 P.2d 798. Brown, in contrast, has only one conviction and only *613 one deadly weapon enhancement. If the defendants in In re Charles each had only one conviction and one enhancement, there would have been no ambiguity.[4]
When a sentencing provision is reasonably subject to differing interpretations, an interpretation most favorable to the criminal defendant is adopted. See State v. Roberts, 117 Wash.2d 576, 586, 817 P.2d 855 (1991). Plain language in a statute, however, does not require construction. State v. Wilson, 125 Wash.2d 212, 216, 883 P.2d 320 (1994). "In construing the meaning of an initiative, the language of the enactment is to be read as the average informed lay voter would read it." Western Petroleum Importers, Inc. v. Friedt, 127 Wash.2d 420, 424, 899 P.2d 792 (1995) (citing Estate of Turner v. Department of Rev., 106 Wash.2d 649, 654, 724 P.2d 1013 (1986)). RCW 9.94A.310(4) begins by providing that deadly weapon enhancements "shall be added to the presumptive sentence[.]" The more specific language within RCW 9.94A.310(4)(e) requires that "[n]otwithstanding any other provision of law, any and all deadly weapon enhancements under this section are mandatory, [and] shall be served in total confinement." This language clearly dictates a reading by the average informed lay voter that deadly weapon enhancements are mandatory and must be served.[5]
Brown argues that the Legislature's failure to include second degree assault in RCW 9.94A.120(4), which requires mandatory minimum sentences for certain crimes, is evidence that a deadly weapon enhancement is susceptible to an exceptional sentence. This argument confuses a sentence for an underlying crime with a sentence enhancement.
An enhancement "is a statutorily-mandated increase to an offender's sentence range because of a specified factor in the commission of the offense." In re Charles, 135 Wash.2d at 253, 955 P.2d 798 (citing Washington Sentencing Guidelines Comm'n, Adult Felony Sentencing app. G, at G-1 (1996)). "The structure of the SRA is that a sentencing court calculates a standard range sentence by applying the defendant's offender score with the seriousness level of a crime. The court then adds any enhancements to a given base sentence." In re Charles, 135 Wash.2d at 254, 955 P.2d 798. However, judicial discretion to impose an exceptional sentence does not extend to a deadly weapon enhancement in light of the absolute language of RCW 9.94A.310(4)(e).
"This court has consistently held that fixing penalties for criminal offenses is a legislative, and not a judicial, function." State v. Manussier, 129 Wash.2d 652, 667, 921 P.2d 473 (1996). While Brown's arguments foster preservation of judicial discretion in sentencing, RCW 9.94A.310(4)(e) clearly provides that an offender's sentence cannot be reduced below the times specified in RCW 9.94A.310(4)(b). If RCW 9.94A.310(4)(e) is to have any substance, it must mean that courts may not deviate from the term of confinement required by the deadly weapon enhancement. This case is remanded for re-sentencing consistent with our decision.
GUY, C.J., and SMITH, ALEXANDER, TALMADGE, JJ., concur.
MADSEN, J. (dissenting).
Once again, a majority of this Court has interpreted provisions of the Sentencing Reform Act of 1981(SRA), RCW 9.94A, so as to limit discretion of sentencing judges, an interpretation unsupported by statutory language, thereby disserving the purposes of the SRA. I write to dissent from this interpretation *614 which effectively creates mandatory minimum sentences for Class B felonies committed with a deadly weapon under RCW 9.94A.310(4)(e), overriding the discretion given to sentencing courts under RCW 9.94A.120(2). As a practical consideration, I dissent because the trial judge in this case did exactly what he was directed to do under RCW 9.94A.310(4) and the Adult Sentencing Guidelines Manual.
The purposes of the SRA are set out in RCW 9.94A.010. That section warrants being stated in full:
The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to add a new chapter to Title 9 RCW designed to:
(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;
(4) Protect the public;
(5) Offer the offender an opportunity to improve him or herself; and
(6) Make frugal use of the state's resources.
RCW 9.94A.010 (emphasis added).
The SRA replaced an indeterminate sentencing system with a determinate one; however, it preserved judicial discretion albeit limited by established guidelines. See State v. Ammons, 105 Wash.2d 175, 181, 713 P.2d 719 (1986). One of the provisions which preserves discretion is RCW 9.94A.120(2), permitting courts to impose exceptional sentences. Without such discretion, sentencing judges would be hard pressed to fulfill certain purposes of the SRA through the sentences they imposed. This Court has stated that by passing sentencing reform, "[t]he emphasis was shifted from rehabilitation to proportionality, equality and justice." State v. Barnes, 117 Wash.2d 701, 710, 818 P.2d 1088 (1991). However, the majority asserts that RCW 9.94A.310(4)(e), the section amended by Initiative 159, now trumps judicial discretion under RCW 9.94A.120(2). Such an interpretation is unsupported.
Initiative 159, referred to as the "Hard Time for Armed Crime" initiative, was passed by the Legislature in 1995. Its official ballot title was "Shall penalties and sentencing standards be increased for crimes involving a firearm, and sentences and plea agreements be public records?" State v. Broadaway, 133 Wash.2d 118, 123, 942 P.2d 363 (1997). Its legislative title was, "An Act Relating to increasing penalties for armed crimes...." Id.
The initiative, when passed, did what its titles suggest; it increased penalty enhancements for certain offenses. When passed, the initiative specifically amended subsections of RCW 9.94A.310. It did not amend either the exceptional sentence provision (RCW 9.94A.120(2)) or the mandatory minimum sentencing provision (RCW 9.94A.120(4)). However, the majority opinion suggests that the mere phrase, "Notwithstanding any other provision of law," in RCW 9.94A.310(4)(e), absent amendment of any other section, bars a sentencing court from imposing an exceptional sentence below the 12-month deadly weapon enhancement. Although the court has properly included the 12-month enhancement in calculating the standard sentencing range, the majority nevertheless creates a mandatory minimum sentence of 12 months for a Class B felony committed with a deadly weapon even though the mandatory minimum sentencing provision was not amended by Initiative 159 to include Class B felonies committed with a deadly weapon.
This Court, in In re Post Sentencing Review of Charles, 135 Wash.2d 239, 253, 955 P.2d 798 (1998),[1] considered RCW *615 9.94A.310(3)(e), which contains identical language related to penalty enhancements for felonies committed with firearms. We unanimously held that despite the wording of that particular subsection, other provisions of the SRA were still controlling. Without clearer direction from the Legislature, whose responsibility it is to establish criminal penalties, this Court should not infer from silence the indirect amending of two additional provisions of the SRA. It is instructive to note that the Persistent Offender Accountability Act, Initiative 593, was passed by the Legislature in 1993 and specifically amended RCW 9.94A.120(4). See State v. Thorne, 129 Wash.2d 736, 746, 921 P.2d 514 (1996). Initiative 159 did not amend RCW 9.94A.120(4).
A penalty enhancement and a mandatory minimum sentence are distinct. This Court has stated, "An enhancement increases the presumptive or standard sentence." State v. Silva-Baltazar, 125 Wash.2d 472, 475, 886 P.2d 138 (1994). In other words, an enhancement "stiffen[s] the penalty for the substantive offense." Id. The standard range is the presumptive sentence. State v. Parker, 132 Wash.2d 182, 186, 937 P.2d 575 (1997). "An enhancement is not a separate sentence; rather, it is a statutorily-mandated increase to an offender's sentence range because of a specified factor in the commission of the offense." In re Post Sentencing Review of Charles, 135 Wash.2d at 253, 955 P.2d 798.
A mandatory minimum sentence has been defined as a "statutory provision[] binding courts to impose specific criminal penalties for certain criminal conduct." Philip Oliss, Mandatory Minimum Sentencing: Discretion, the Safety Valve, and the Sentencing Guidelines, 63 U. Cin. L.Rev. 1851, 1851 (1995). "Under such mandatory minimum laws, the judiciary may not use traditional discretionary powers to alleviate sentences, suspend sentences, or even impose probation. Rather, the minimum penalty acts as a floor at which sentencing must begin." Lisa E. Cowart, Legislative Prerogative vs. Judicial Discretion: California's Three Strikes Law Takes a Hit, 47 DePaul L.Rev. 615, 634 (1998) (footnote omitted).
It is this unsupportable transformation of a sentence enhancement into a mandatory minimum sentence that I find most disturbing. It robs judges of the discretion the SRA expressly gives them in order to fulfill certain purposes of the act. Professor Stephen Schulhofer, Director of the Center for Studies in Criminal Justice, has asserted that mandatory minimum sentences result in "arbitrarily harsh sentences disproportionate to culpability, unwarranted uniformity among unlike cases, and disparate treatment of like cases due to haphazard and discriminatory practice in charge bargaining." Daniel W. Stiller, Initiative 593: Washington's Voters Go Down Swinging, 30 Gonz.L.Rev. 433, 458 (1994-95).
RCW 9.94A.120(4) lists five offenses for which mandatory minimum sentences exist. The crime of second degree assault, with or without a deadly weapon, is not among them. The rule of expressio unius est exclusio alterius applies here. In other words, "[w]here a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions." Queets Band of Indians v. State, 102 Wash.2d 1, 5, 682 P.2d 909 (1984).
The circumstances of this particular case underscore the importance of preserving judicial discretion in sentencing and not eliminating it through inference. In its findings of fact (none of which were challenged on appeal), the trial court stated:
1. Based almost entirely upon the testimony of the victim, the following are the operative facts of the offense. The defendant did not set out to harm the victim on the date of the offense. Rather, when the defendant arrived at the victim's home, she implored of him "Why can't we still be friends?" The victim's response was "Don't bother talking; I'm not listening". With a number of the assembled young people getting very animated over some small financial debt owed by defendant's friend to the victim's sister, the victim *616 went out to where the cars were parked and made comments about going and collecting the debt from that person's parents. The defendant continued to express a wish to patch things up with the victim. When she commented "Everyone who hates me is here", the victim responded sarcastically "Kevin isn't". Aware that the defendant did not approve of his smoking, the victim had a cigarette in his mouth and, the Court concludes, blew smoke into the defendant's face.
2. With the victim in close proximity and with some basis for believing the emotional confrontation was about to escalate to a physical plane, the defendant brought from her pocket the knife that she, like the victim, routinely carried for use as a tool and not a weapon. With unjustified force, she then slashed at his face inflicting a serious wound on his nose....
3. The psychiatrist with whom the defendant is treating has informed the Court and the DOC [Department of Corrections] that the defendant suffers from a species of post-traumatic stress disorder, experiences panic attacks, has been hospitalized for this condition in the past. He believes this condition contributed to her commission of this offense which is markedly out of character.
4. When it returned its verdict of guilty in the case, the twelve person jury submitted to the Court a document signed by all of them asking that the Court exercise "leniency" in imposing sentence on the defendant. It stated that their request was "based upon the testimony of the defendant and the other witnesses". The request was a genuine expression of the jury's view of the case and was not the product of anyone's solicitation nor of any compromise on their part....
Opening Br. of Appellant (Findings and Conclusions for Exceptional Sentences).
Based upon these findings, the trial court concluded that the defendant's mental and emotional state "was such that she was prone to making an impulsive, panicked overreaction in this confrontational situation. This circumstance resulted in a significant impairment of her ability to fully appreciate the wrongfulness of her conduct and to conform her conduct to the requirements of law." Opening Br. of Appellant (Conclusions of Law, Jan. 17, 1997). In addition, the court stated that the jury "was properly appreciative that the circumstances [of this case] make this defendant's offense different from the typical assault in the second degree. To ignore their request would be to disserve those statutory goals [of promoting respect for the law and providing punishment that is commensurate with specific criminal activity]". Opening Br. of Appellant (Conclusions of Law, Jan. 17, 1997).
It is precisely for this unique set of circumstances that judicial discretion is most appropriate. The majority's interpretation of the effect of RCW 9.94A.310(4)(e) is far too sweeping given the absence of supporting language. It is not within the authority of this Court to create, through implication, mandatory minimum sentences and limit judicial discretion further.
This Court has stated that a statute should be construed so as to best advance its legislative purposes. In re Personal Restraint Petition of Young, 122 Wash.2d 1, 22, 857 P.2d 989 (1993). The majority view does not support the purposes of the SRA, but instead elevates one purpose, namely punishment, above all others.[2] Because the other provisions were not amended, RCW 9.94A.310(4)(e) is ambiguous at best. Consequently, the rule of lenity requires this Court to adopt an interpretation most favorable to the criminal defendant. In re Personal Restraint Petition of Hopkins, 137 Wash.2d 897, 901, 976 P.2d 616 (1999). Given that the enhancement has already been added to the *617 standard sentencing range, RCW 9.94A.310(4)(e) should not be interpreted so as to eliminate the court's discretion under RCW 9.94A.120(2) to impose a sentence less than the 12-month enhancement range.
In this case, the sentencing court did what the statutory language requires. RCW 9.94A.370 states, "[t]he intersection of the column defined by the offender score and the row defined by the offense seriousness score determines the presumptive sentencing range ... The additional time for deadly weapon findings ... shall be added to the entire presumptive sentence range. The court may impose any sentence within the range that it deems appropriate." See also Washington Sentencing Guidelines Comm'n, Adult Sentencing Guidelines Manual, at I-16 (1997). The Judgment and Sentence form indicates that an enhancement is added to the standard range which results the total standard range. More importantly, RCW 9.94A.310(4) itself states that the "additional times shall be added to the presumptive sentence..."[3] Had the sentencing court refused to add the deadly weapon enhancement to the standard range, then under the language of RCW 9.94A.310(4)(e), which makes the enhancement mandatory, the court would have abused its discretion. Instead, the court did what the statute requires, and then, under RCW9.94A.120(2), chose to make a downward departure.
A sentence enhancement should not be transformed into a mandatory minimum sentence through inference. Nor should judicial discretion be limited in a way that conflicts with the express purposes of the SRA. "If the heart of a criminal justice system is the criminal code, its conscience resides in the power of the jury to acquit against the evidence and the power of the sentencing judge to look beyond the definition of the offense in fashioning an appropriate sanction for a particular defendant." Junker, Guidelines Sentencing, 25 U.C. Davis L. Rev at 739. Proportionality, equality, and justice demand that judicial discretion be preserved to impose exceptional sentences including downward departures. By reading a mandatory minimum sentence into RCW 9.94A.310(4)(e), the majority sacrifices individualized determinations of proportionality.
DURHAM, JOHNSON and SANDERS, JJ., concur.
NOTES
[1] Brown's motion for a new trial and supporting affidavit are missing from the record.
[2] RCW 9.94A.310(4)(e) was amended by the Legislature in 1998, but that amendment does not apply to the events here, which took place in 1996.
[3] RCW 9.94A.310(3)(e) is identical to the statutory section at issue in this case, RCW 9.94A.310(4)(e). The only difference is that RCW 9.94A.310(3)(e) refers to "firearm" enhancements while RCW 9.94A.310(4)(e) refers to "deadly weapon" enhancements. Like RCW 9.94A.310(4)(e), RCW 9.94A.310(3)(e) was amended by the Legislature in 1998.
[4] In re Charles provides that "[w]hen the conviction is for a single offense, the provision is easy to interpret. The enhancement is added to the base sentence that would otherwise be imposed. But when the conviction is for two or more offenses, which are sentenced concurrently, questions of interpretation may arise...." In re Charles, 135 Wash.2d at 251, 955 P.2d 798 (quoting Washington Sentencing.Guidelines Comm'n, Adult Felony Sentencing app. F, at F-1 to F-2 (1996)).
[5] Although the intent behind an enactment's language only becomes relevant if there is some ambiguity in that language, Friedt, 127 Wash.2d at 423, 899 P.2d 792, interpreting deadly weapon enhancements as mandatory enhancements that must be served is consistent with Initiative 159's purpose to "increase sentences for armed crime." See In re Charles, 135 Wash.2d at 246, 955 P.2d 798.
[1] In State v. Fuller, 89 Wash.App. 136, 947 P.2d 1281 (1997), the Court of Appeals held, inter alia, that a defendant could not receive home detention for a six-month deadly weapon enhancement under RCW 9.94A.310(4)(e). The court asserted that the Legislature intended this section to take precedence over other provisions including RCW 9.94A.120(2). The only citation was to State v. Lewis, 86 Wash.App. 716, 937 P.2d 1325 (1997), which this Court reversed and remanded in In re Post Sentencing Review of Charles, 135 Wash.2d 239, 255, 955 P.2d 798 (1998).
[2] One commentator has written that this Court has "crowned" punishment as the primary purpose of guidelines sentencing even though there is little doctrinal support. John M. Junker, Guidelines Sentencing: The Washington Experience, 25 U.C. Davis L.Rev. 715, 748 (1992). "What remains to be explained is why courts, which have the responsibility to promote all of the goals of the statute, including those that may entail exceptional sentences based on personal characteristics and circumstances that are not easily quantified, have instead mimicked the grid-locked mindset of the commission." Id. at 749.
[3] In the Court of Appeals opinion in this case, which was subsequently withdrawn, the court stated, "We agree with Brown that deadly weapon enhancements are to be added to both ends of the underlying crime's sentencing range to arrive at a total standard range." State v. Brown, 955 P.2d 818 (Wash.Ct.App.1998).