# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53188-7-II |
| Respondent, | Consolidated with |
| v. | |
| BRANDON MICHAEL ENGLISH and CALVIN JAMES QUICHOCHO, | |
| Appellants, | |
| STATE OF WASHINGTON, | No.  53198-4-II |
| Respondent, | |
| v. | |
| CALVIN JAMES QUICHOCHO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Brandon M. English and Calvin J. Quichocho appeal the sentences imposed by the trial court following resentencing.  English and Quichocho argue that the trial court erred by concluding that it did not have the discretion to impose an exceptional sentence downward on their mandatory, consecutive firearm sentencing enhancements.  Specifically, they contend that the logical extension of our Supreme Court's rulings in *State v. O'Dell*[1] and *State v. Houston-Sconiers*[2] require trial courts to have the discretion to impose an exceptional downward on otherwise mandatory sentence enhancements for "youthful" offenders.  However, because we do

---

[1]  183 Wn.2d 680, 698-99, 358 P.3d 359 (2015).

[2]  188 Wn.2d 1, 37, 391 P.3d 409 (2017).

not have the authority to overrule our Supreme Court's opinion in *State v. Brown*,[3] we hold that the trial court properly followed the controlling law. Accordingly, we affirm English's and Quichocho's sentences.

Quichocho also appeals certain legal financial obligations (LFOs) imposed by the trial court. The State concedes the challenged LFOs were improper. Therefore, we reverse the improper LFOs and remand to the trial court to strike the jury demand fee, community supervision costs, and interest on nonrestitution LFOs from Quichocho's judgment and sentence.

In a Statement of Additional Grounds (SAG),[4] English claims prosecutorial misconduct and that opinions made in the victim impact statement presented at the resentencing hearing were improper. We decline to review English's SAG claims.

FACTS

In 2014, English and Quichocho were found guilty of two counts of first degree robbery, two counts of first degree kidnapping, and two counts of second degree assault. All the charges had firearm sentencing enhancements. English was 20 years old at the time, and Quichocho was 21 years old at the time. They appealed, and we affirmed the convictions. *State v. English*, No. 46921-9-II, slip op. at 1 (Wash. Ct. App. Mar. 21, 2017) (unpublished).[5] However, we held that the second degree assault convictions merged with the first degree robbery convictions and

---

[3] 139 Wn.2d 20, 983 P.2d 608 (1999), *overruled in part by Houston-Sconiers*, 188 Wn.2d at 21.

[4] RAP 10.10.

[5] http://www.courts.wa.gov/opinions/pdf/D2%2046921-9-II%20Unpublished%20Opinion.pdf

remanded for the superior court to vacate the second degree assault convictions. *English*, No. 46921-9-II, slip op. at 5.

On remand, the trial court expanded the scope of the proceeding and allowed the parties to provide evidence and argument on the issue of whether English and Quichocho's youth was a mitigating factor to justify an exceptional sentence below the standard range based on *O'Dell*. At the resentencing hearing, English and Quichocho provided evidence supporting their claim that their youth mitigated their culpability for their offenses and justified an exceptional sentence below the standard range. One of the victims provided a written victim impact statement that was read to the sentencing court during the resentencing hearing. The trial court found that an exceptional sentence below the standard range was justified. However, the trial court ruled that while it could entertain an exceptional sentence below the standard range on the base offenses, it did not have discretion to modify the sentencing enhancements:

1. Threshold issue: deadly weapon enhancements
   a. Defense argues that the court has the ability to not run such enhancements consecutive to the underlying sentence and each other pursuant to *State v. Houston-Sconiers*, 188 [Wn].2d 1 (2016).
   b. However, the State argues that *Houston-Sconiers* applies only to juveniles. The focal quote is "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not."
   c. The Supreme Court could have, as the state notes, referred to youthful offenders as opposed to juveniles. It did not. The court finds this was an intentional decision by the Supreme Court. Consequently the court does not find that it was their intent to extend their decision in *Houston-Sconiers* as it relates to the mandatory application of weapon enhancements to youthful adults.

Clerk's Papers (CP) at 507; Quichocho CP at 204.

The trial court sentenced English to a total 360 months confinement, which included 240 months for the mandatory firearm sentencing enhancements that were imposed consecutively to the sentence for the underlying offenses and to each other. The trial court sentenced Quichocho to a total 389 months confinement, which included 240 months for the mandatory firearm sentencing enhancements that were imposed consecutively to the sentence for the underlying offenses and to each other.

The trial court found that both defendants were indigent. The trial court imposed a $500 crime victim assessment, a $250 jury demand fee, and $460 restitution. The trial court also ordered English and Quichocho to pay the cost of supervision while on community custody. Both judgments and sentences included a provision imposing interest on all the legal financial obligations.

English and Quichocho appeal their sentences.

ANALYSIS

A.    EXCEPTIONAL SENTENCE

English and Quichocho argue that the trial court erred by concluding that it did not have the discretion to modify firearm sentencing enhancements as part of their sentences. However, because binding Supreme Court precedent makes consecutive firearm sentencing enhancements mandatory for adult offenders, the trial court properly ruled it did not have the discretion to modify the imposition of consecutive firearm sentencing enhancements.

When a defendant requests an exceptional sentence below the standard range, "review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range."

4

*State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997), *review denied*, 136 Wn.2d 1002 (1998). Defendants are not entitled to an exceptional sentence, but "every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (emphasis omitted). Failure to consider an exceptional sentence downward or the erroneous belief that the trial court lacks the authority to consider an exceptional sentence downward is an abuse of discretion that warrants remand. *Grayson*, 154 Wn.2d at 342, *Garcia-Martinez*, 88 Wn. App. at 329-31.

In *State v. Brown*, 139 Wn.2d 20, 28-29, 983 P.2d 608 (1999), *overruled in part by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), our Supreme Court held that firearm and deadly weapon sentencing enhancements are mandatory and must be imposed consecutively, regardless of whether an offender receives an exceptional sentence below the standard range on the underlying offense. Therefore, *Brown* clearly establishes that the sentencing court did not have the authority or discretion to modify the firearm sentencing enhancements that were part of English's and Quichocho's sentences. However, English and Quichocho argue that recent case law, shows that trial courts should have the discretion to modify otherwise mandatory, consecutive firearm sentencing enhancements for youthful offenders.

In *State v. O'Dell*, 183 Wn.2d 680, 689-96, 358 P.3d 359 (2015), our Supreme Court held that youth may justify an exceptional sentence below the standard range if the defendant's youth mitigated the defendant's culpability. And in *State v. Houston-Sconiers*, 188 Wn.2d 1, 18-22, 391 P.3d 409 (2017), our Supreme Court overruled *Brown* as it applies to juvenile offenders who were tried and sentenced in adult court. Specifically, the court held,

5

> In accordance with *Miller* [*v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L.Ed. 2d 407 (2012)], we hold that sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any *juvenile defendant*, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not. To the extent our state statutes have been interpreted to bar such discretion *with regard to juveniles*, they are overruled. Trial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements.

*Houston-Sconiers*, 188 Wn.2d at 21 (emphasis added) (footnotes omitted).

English and Quichocho recognize that *Houston-Sconiers* involved juvenile defendants and did not specifically address adult offenders who were youthful at the time of the offense. However, they argue that the logical extension of *O'Dell* and *Houston-Sconiers* is to provide trial courts with the discretion to modify otherwise mandatory firearm sentencing enhancements as part of an exceptional sentence for youthful adult offenders. Regardless of the strength of this reasoning, we do not have the authority to overrule the Supreme Court's decision in *Brown* as it applies to adult offenders.[6]

Once our Supreme Court "has decided an issue of state law, that interpretation is binding on all lower courts" until it is overruled by our Supreme Court. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). The Supreme Court was clear in *Houston-Sconiers* that it was addressing "any juvenile defendant" and overruling *Brown* "with regard to juveniles." *Houston-Sconiers*, 188 Wn.2d at 21. Therefore, *Brown* is still binding authority for adult offenders. We do

---

[6] Although we agree that the trial court properly followed the controlling law, we do so because we, too, are similarly constrained to follow our Supreme Court's precedent. *See State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). But we recognize that the current science, as well as evolving case law, demonstrate that there is no meaningful difference between offenders under the age of 18, tried as adults, and those between 18 and 25 who demonstrate that their youthfulness contributed to their offense, justifying an exceptional sentence downward.

not have the authority to overrule *Brown* and hold otherwise. *Gore*, 101 Wn.2d at 487; *see also*

*State v. Brown*, 13 Wn. App. 2d 288, 291, 466 P.3d 244 (2020) (Division I holding that it does not

have the authority to overrule *Brown* as it applies to adult offenders); *State v. Mandefero*, 14 Wn.

App. 2d 825, 831-32, 473 P.3d 1239 (2020) (holding *Houston-Sconiers* does not apply to youthful

offenders who were over 18 at the time of their offense, sentencing enhancements are mandatory

under *Brown*, and the appellate court does not have the authority to overrule *Brown*).

Because *Brown* continues to apply to adult offenders, the trial court properly concluded it

did not have the authority to modify the consecutive, mandatory firearm sentencing enhancements

as part of an exceptional sentence. Therefore, we affirm English's and Quichocho's sentences.

B.     QUICHOCHO'S LFOS

Quichocho argues that the sentencing court erred when it imposed the $250 jury demand

fee, community custody supervision fees, and interest on nonrestitution LFOs. The State concedes

that these LFOs were improper.

Currently, the LFO statutes prohibit trial courts from imposing a criminal filing fee, jury

demand fee, and interest accrual on nonrestitution LFOs on an indigent defendant. *See* RCW

36.18.020(2)(h); RCW 10.46.190; RCW 10.82.090(1); *State v. Ramirez*, 191 Wn.2d 732, 746-47,

426 P.3d 714 (2018). And trial courts have the discretion to waive community custody supervision

fees. RCW 9.94A.703(2)(d).

Here, the trial court found that Quichocho was indigent and not anticipated to be able to

pay legal financial obligations in the future. Therefore, we accept the State's concession, reverse

imposition of the challenged LFOs, and remand for the trial court to strike the $250 jury demand

fee, the community supervision costs, and interest on nonrestitution LFOs from Quichocho's judgment and sentence.

C.       ENGLISH'S SAG

In his SAG, English makes two claims regarding the victim impact statement presented at the resentencing hearing.  First, English claims that the victim impact statement shows the prosecutor committed misconduct by disclosing facts about the resentencing and the defendants to the crime victim.  Second, English claims that the crime victim impact statement presented an improper opinion on the defendants' maturity.  We decline to address these claims.

First, English claims that, because the victim referenced the defendants' having a criminal history and recognized that the resentencing was addressing how youth affected the defendants' culpability, the prosecutor must have improperly disclosed information to the crime victim.  But there are no facts in the record that establish how the crime victim obtained the information she referenced in her victim impact statement.  More importantly, there are no facts in the record that establish the prosecutor shared any specific information with the crime victim.  We will not consider matters outside the record on appeal. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).  The appropriate means of raising issues based on evidence or facts outside of the existing record is through a personal restraint petition.  *Id*.

Second, English claims that the victim impact statement presented an improper opinion on the defendants' maturity.  However, English did not object to the victim impact statement at the resentencing hearing.  We do not review issues raised for the first time on appeal.  RAP 2.5(a). Therefore, we decline to review English's claim that the victim impact statement offered an improper opinion on the defendants' maturity.

CONCLUSION

Because the Supreme Court's decision in *Houston-Sconiers* did not overrule *Brown* as it applies to adult offenders, the trial court properly concluded that it did not have the discretion to modify the imposition of firearm sentencing enhancements as part of an exceptional sentence. We accept the State's concession that the trial court improperly imposed the LFOs that Quichocho challenges. And we do not review English's SAG claims. Accordingly, we affirm English and Quichocho's sentences. We also reverse the LFOs that Quichocho challenges and remand to the trial court to strike the jury demand fee, community supervision fee, and interest on nonrestitution LFOs from Quichocho's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Sutton, J.