**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 85521-2-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MICHAEL ALLEN RIDEAUX, | |
| Respondent. | |

BIRK, J. — Micheal Rideaux appeals his criminal sentence, challenging the sentencing court's imposition of three firearm enhancements consecutive to the base term and consecutive to one another, and the imposition of a victim penalty assessment (VPA). We affirm the imposition of consecutive firearm enhancements and remand with instructions to strike the VPA as a ministerial matter.

I

According to police and evidence later brought out at trial, during the night of March 11-12, 2005, after getting into a fight earlier, while another drove him Rideaux fired at least 24 shots from an assault rifle toward three occupants of another car at speed on the highway, killing Dee Davis, one of the occupants of the other car, and injuring the other two. Rideaux was 23 years old at the time. By third amended information, the State charged Rideaux with one count of murder in the first degree and two counts of attempted murder in the first degree, all while

armed with a firearm. Rideaux was convicted of all three counts, and found by special verdict to be armed with a firearm.

At sentencing, the State recommended a sentence totaling 891 months. A family speaker on behalf of Rideaux, his counsel, and Rideaux maintained his innocence. He sought an exceptional downward sentence of 240 months. The court denied Rideaux's request for an exceptional sentence.

Because murder in the first degree or the attempt of one is a serious violent offense, RCW 9.94A.030(46)(a)(i), (ix), Rideaux was subject to consecutive, rather than concurrent, sentencing under RCW 9.94A.589(1)(b). Under that provision, the court was to determine the standard sentence range for one of his offenses— the one with the "highest seriousness level"—using his prior and current convictions that were not serious violent offenses to determine his offender score, and determine the standard sentence range for other serious violent offenses using an offender score of zero. Id. The court did this by calculating his offender score for the murder conviction as "1," and using zero as his offender score for the consecutively sentenced attempted murder convictions. This led to standard ranges of 250 to 333 months for the murder conviction, and 180 to 240 months for each of the attempted murder convictions. In addition, each count was subject to a 60 month firearm enhancement. In accord with the State's recommendation, the court sentenced Rideaux to a mid-range sentence of 291 months on the murder conviction, mid-range sentences of 210 months on each of the attempted murder convictions, to run consecutively, and a 60 month firearm enhancement on each

count, to run consecutively to the base terms and to each other. This resulted in a total sentence of 74 years, 3 months in prison. The judgment and sentence were affirmed on appeal. State v. Rideaux, noted at 143 Wn. App. 1046, 2008 WL 852016, at *8.

II

This sentencing calculation was held to be error in State v. Weatherwax, 188 Wn.2d 139, 155, 392 P.3d 1054 (2017) (citing State v. Breaux, 167 Wn. App. 166, 179, 273 P.3d 447 (2012)). The consecutive sentencing rule of section .589(1)(b) is ambiguous in the case of anticipatory crimes, here Rideaux's attempted murder convictions. Weatherwax, 188 Wn.2d at 154-55. An anticipatory crime has the same seriousness level as its target crime. Id. at 152. But an anticipatory crime is subject to a rule setting its standard range at only 75 percent of a completed offense. Id. at 154 (citing RCW 9.94A.595). As a result, because Rideaux's murder and attempted murder convictions had the same seriousness level, section .589(1)(b) did not say which should be used to start sentencing calculations and scored at 1, and which should be thereafter scored at zero. But it results in a longer sentence to apply the offender score to the completed offense and use zero for the attempt convictions, than to start with one of the attempt convictions. See Breaux, 167 Wn. App. at 171-74 (comparing calculations). Weatherwax held the rule of lenity required the latter. 188 Wn.2d at 155.

3

On February 3, 2021, with the State conceding error, the Supreme Court granted Rideaux's personal restraint petition based on Weatherwax and remanded to King County Superior Court for resentencing.

Resentencing was held on June 9, 2023. Rideaux asked for an exceptional downward sentence, which would have amounted to his time served since being taken into custody in March 2005, then totaling 18 years in prison. Rideaux pointed to his young age at the time of the crimes, his susceptibility to peer pressure in the highly charged atmosphere of that night, his accomplishments in prison including obtaining his GED,[1] the maturity he had gained, his work in corrections employment, and his favorable disciplinary record. Rideaux relied on an amended June 6, 2023 report by psychologist David M. Dixon, PhD. At sentencing, Dr. Dixon testified that he examined Rideaux on November 13, 2021, for approximately five hours. Dr. Dixon testified he found no evidence that Rideaux suffered from psychopathology, Rideaux did not minimize his actions, and he took responsibility for what happened. Dr. Dixon opined that at the time of the crimes, Rideaux showed emotional developmental delay, was suggestible and impressionistic, and that immaturity, suggestibility, and impulsivity played a role in his involvement in the crimes. Dr. Dixon described Rideaux as having made remarkable progress toward rehabilitation while in custody, with a good prognosis if released.

The State was represented by the prosecutor who originally tried the case. The State noted the Weatherwax error affected the standard range by "less than

---

[1] A "GED" is a general equivalency degree program for students who are not able to complete a traditional high school curriculum. State v. Becker, 132 Wn.2d 45, 58, 935 P.2d 1321 (1997).

six months," but agreed that on resentencing Rideaux was entitled to seek an exceptional sentence on different grounds. The State argued there was nevertheless a mandatory minimum of 240 months for a conviction of murder in the first degree, see RCW 9.94A.540, as well as mandatory consecutive firearm enhancements, none of which could be modified through an exceptional sentence, resulting in the court lacking discretion to impose a sentence less than 35 years. The State disputed whether Rideaux's childhood supported Dr. Dixon's opinion about his impetuousness at that time. The State disputed that there was a factual basis to say the crime was the result of peer pressure. Finally, the State disputed the degree to which Rideaux acknowledged responsibility for the crimes. Yet, recognizing Rideaux's youth and progress in custody, the State amended its recommendation to the low end of the standard range.

The court heard from Davis's family, including his son who had been 10 months old at the time of the murder, and several persons who spoke on Rideaux's behalf and to his rehabilitation. Rideaux addressed the court, expressing both acceptance of responsibility and remorse. In pronouncing sentence, the court noted Rideaux's abandonment of his claims of innocence, expression of remorse, and progress in custody. The court found the presumptive range was clearly excessive in light of the purposes of the Sentencing Reform Act of 1981 (SRA), and in light of the requirement that the sentences for Rideaux's crimes run consecutively and with mandatory firearm enhancements. However, the court concluded it was required to impose a mandatory minimum sentence for murder

5

in the first degree of 240 months, and in addition the three firearm enhancements consecutive to the sentence and to one another.

The new standard ranges were 240 to 320 months for the murder conviction, 187.5 to 249.75 months for the first attempted murder conviction, and 180 to 240 months for the other attempted murder conviction. The court imposed the low end of each standard range, running concurrently. The court imposed a 60 month firearm enhancement on each count, to run consecutively to the base terms and to each other. The new total sentence was 35 years.

Rideaux appeals.

III

A

Rideaux argues that the sentencing court "erred in failing to recognize its discretion to impose concurrent rather than consecutive firearm enhancements."

In State v. Brown, the court held that a deadly weapon enhancement was " '*mandatory*,' " " '*must be served*,' " and left no judicial discretion to impose an exceptional downward sentence not including the enhancement. 139 Wn.2d 20, 26, 983 P.2d 608 (1999) (quoting former RCW 9.94A.310(4)(e)(1995)), overruled in part by State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017). In State v. DeSantiago, 149 Wn.2d 402, 416, 68 P.3d 1065 (2003), overruled in part by State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017), the court held that newly added statutory language additionally meant that firearm and deadly weapon enhancements run consecutively to other firearm or deadly weapon

enhancements.  In State v. Kelly, 25 Wn. App. 2d 879, 888-89, 526 P.3d 39 (2023), review granted, 2 Wn.3d 1001 (2023), this court adhered to the result long understood to follow from the combination of Brown's rejection of discretion to sentence below a term required by an applicable enhancement coupled with the DeSantiago's understanding that the legislature mandated consecutive enhancements—that sentencing courts lack discretion to do other than impose applicable enhancements consecutively.

As he did in the trial court, Rideaux concedes that current Supreme Court law forecloses his argument, acknowledging the issue is controlled by Brown. Rideaux hopes that in reviewing Kelly, the Supreme Court will adopt the analysis advanced by the dissent in Brown, that would have recognized the enhancements as increasing the standard range, but without overriding the sentencing court's discretion otherwise afforded by the SRA.  Brown, 139 Wn.2d at 32-33 (Madsen, J., dissenting).  But the Supreme Court has not done so yet, so the sentencing court here did not err, because under existing law it lacked discretion to do other than impose the firearm enhancements consecutively.  We are equally constrained to affirm.

B

Rideaux separately challenges the sentencing court's imposition of the $500 VPA, pointing out it was mandatory at the time of his sentencing under review but under new legislation shall not be imposed if the court finds that the defendant is indigent.  The State does not dispute Rideaux is indigent and does not object to

striking the VPA from the judgment and sentence as a ministerial matter. We accept the State's concession.

We affirm Rideaux's sentence and remand with directions to strike the VPA as a ministerial matter.

Birk, J.

WE CONCUR:

Chung, J.

Smith, C.J.