IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37445-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY LAURENCE WRIGHT, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Eighteen years after being convicted of a gang-related shooting and receiving a sentence that included eight firearm enhancements, Anthony Wright was resentenced as the result of an offender score error. At a full resentencing in 2020, Mr. Wright presented impressive evidence of his rehabilitation.

By correcting Mr. Wright's offender score and imposing low-end sentences for all counts and exceptional concurrent sentencing for most of the counts, the resentencing court reduced what had been Mr. Wright's sentence of approximately 138 years to a sentence of approximately 76 years. Mr. Wright also requested that his firearm enhancements run concurrently and that his rehabilitation be relied on to impose even shorter, exceptional sentences, but the resentencing court concluded that neither was statutorily authorized.

Mr. Wright asks us to hold that the resentencing court had discretion it believed it lacked, but the resentencing court was right about the limits of its discretion. Relief for Mr. Wright must come from the executive branch or the legislature. We affirm.[1]

FACTS AND PROCEDURAL BACKGROUND

In 2001, 28-year-old Anthony Wright and other members of his gang fired shots into a house, killing three-year-old Pasheen Bridges, injuring a young woman, and missing four other adults and two children. *State v. Wright*, noted at 119 Wn. App. 1052, slip op. at 1 (2003). The State charged Mr. Wright with first degree murder, attempted first degree murder, and six counts of first degree assault, all with firearm enhancements. A jury found Mr. Wright guilty as charged. In 2002, the court imposed a sentence of 1,660 months.

In 2019, Mr. Wright's CrR 7.8 motion for resentencing based on a *Weatherwax*[2] error was granted. Although the error affected only two of the counts, the court granting his motion agreed to conduct a full resentencing.

---

[1] Mr. Wright's motion to certify transfer of the appeal to the Supreme Court is denied.

[2] In *State v. Weatherwax*, 188 Wn.2d 139, 154-55, 392 P.3d 1054 (2017), our Supreme Court held that when an offender receives serious violent offense consecutive sentencing and has two offenses with the same "'highest seriousness level[ ],'" the Sentencing Reform Act of 1981, chapter 9.94A RCW, is ambiguous as to which offense forms the basis for sentencing—and when one offense is an anticipatory offense, it will affect the length of the sentence. The court held that in light of the ambiguity, the rule of lenity requires imposing the lesser possible sentence.

At the resentencing, Mr. Wright was examined by defense counsel about his 2001 crimes. He expressed remorse and explained that shame he feels for what he did has driven him to rehabilitate himself and try to help others realize their full potential.

Mr. Wright submitted many supportive letters from people who operate or work alongside him in the many prison programs in which he has participated throughout his incarceration, a parent of one of his mentees, one of his students, and a retired state representative. All had nothing but the highest praise for Mr. Wright and his work on himself and with other inmates.

Defense counsel argued that the excessive length of Mr. Wright's consecutive sentences and his rehabilitation following his incarceration justified an exceptional mitigated sentence. After comparing Mr. Wright's sentence to his codefendants' sentences and other similar cases, the court agreed that the operation of the multiple offense policy resulted in a presumptive sentence that was clearly excessive. *See* RCW 9.94A.535(1)(g). It imposed exceptional concurrent sentencing for all counts other than the first degree murder count. It concluded it lacked the discretion to run the firearm enhancements concurrently, however. It also concluded that it could not rely on Mr. Wright's postconviction rehabilitation as a basis for altering the sentences imposed for the crimes.

The court imposed the mandatory 40-year sentence for the eight firearm enhancements, and the lowest possible sentence within the standard range for Mr.

3

No. 37445-9-III
*State v. Wright*

Wright's crimes. The result is a total sentence of 915.75 months of confinement. Mr. Wright appeals.

## ANALYSIS

A trial court's mistaken belief that it lacks discretion to impose a mitigated exceptional sentence is error. *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017) (*McFarland* I).[3] Mr. Wright contends that the trial court misapprehended its discretion to sentence him more leniently in three respects.

Mr. Wright's lawyer is well aware of Washington cases that stand as barriers to the more lenient sentencing he seeks for his client: principally *State v. Law*, 154 Wn.2d 85, 92, 110 P.3d 717 (2005), and *State v. Brown*, 139 Wn.2d 20, 29, 983 P.2d 608 (1999), *overruled as to juvenile offenders by State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017)). Drawing on legislative and case law developments, however, he urges us to conclude that the law has changed. For reasons we explain, we are unpersuaded.

*Rehabilitation does not qualify as a mitigating factor under the Sentencing Reform Act of 1981, chapter 9.94A RCW (SRA)*

Fixing appropriate penalties for crime is a legislative function.[4] The legislature's authority is plenary, limited only by the federal and state constitutions. *Law*, 154 Wn.2d

---

[3] Cecily McFarland's prosecution is addressed in five appellate decisions, only two of which are published. We refer to the Supreme Court's decision as *McFarland* I and this court's recent decision, No. 37422-0-III (Wash. Ct. App. July 29, 2021), (following remand and appeal following resentencing) as *McFarland* II.

[4] As Justice Kennedy observed in *Harmelin v. Michigan*:

4

at 92. Under the indeterminate sentencing regime that existed before enactment of the

SRA, judges set minimum and maximum terms of imprisonment and the Board of Prison

Terms and Paroles would determine just how much of the sentence would be served.

*State v. McFarland*, No. 37422-0-III, slip op. at 9 (Wash. Ct. App. July 29, 2021),

https://www.courts.wa.gov/opinions/pdf/374220_pub.pdf (*McFarland* II). The

legislative goal was to allow for rehabilitation and redemption. *Id.* slip op. at 10 (citing

DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE

SENTENCING REFORM ACT OF 1981, § 9.2 (1985)). Judges had near unfettered discretion

to decide when to run sentences concurrently or consecutively. *McFarland* II, slip op. at

9-10 (citing former RCW 9.92.080 (1971)).

The goal of indeterminate sentencing was often not realized. *Id.* slip op. at 10.

"Instead, pre-SRA sentences were frequently disproportionate and racially skewed." *Id.*

(citing Dan Kilpatric & Jack Brummel, *Sentencing Study*, 52 WASH. L. REV. 103, 118

---

Determinations about the nature and purposes of punishment for criminal acts implicate difficult and enduring questions respecting the sanctity of the individual, the nature of law, and the relation between law and the social order. "As a moral or political issue [the punishment of offenders] provokes intemperate emotions, deeply conflicting interests, and intractable disagreements." D[avid] Garland, Punishment and Modern Society 1 (1990). The efficacy of any sentencing system cannot be assessed absent agreement on the purposes and objectives of the penal system. And the responsibility for making these fundamental choices and implementing them lies with the legislature.

501 U.S. 957, 998, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring) (first alteration in original).

(1976)). "The SRA was enacted to address these shortcomings by structuring a judge's discretion in a way that ties sentencing decisions to the crime or crimes of conviction." *Id.* Under the SRA, each count of conviction is assigned a determinate sentencing range based on the statute of conviction and the defendant's offender score (calculated from the defendant's criminal history). *Id.* When, as here, a defendant is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct, the sentences imposed are to be served consecutively to each other. RCW 9.94A.589(1)(b).

While the SRA reduced judicial discretion, it did not eliminate it altogether. *McFarland* II, slip op. at 10. RCW 9.94A.535 authorizes judges to depart from standard sentencing ranges, but the ability to depart is limited. To impose a sentence outside the standard range, the court must find, "considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. RCW 9.94A.535(1) sets forth a nonexclusive list of factors that justify a mitigated sentence. A departure from RCW 9.94A.589(2)'s requirement of consecutive sentencing for serious violent offenses is an exceptional sentence subject to these limitations. RCW 9.94A.535.

Longstanding case law establishes a two-part test for determining whether a factor that is not statutorily identified will support a downward departure from the standard range:

6

> "First, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range. Second, the asserted aggravating factor must be sufficiently substantial and compelling *to distinguish the crime in question* from others in the same category."

*State v. Smith*, 123 Wn.2d 51, 57, 864 P.2d 1371 (1993) (emphasis added) (quoting *State v. Grewe*, 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991)), *overruled in part on other grounds*, *State v. Hughes*, 154 Wn.2d 118, 140, 110 P.3d 192 (2005).

In *Law*, our Supreme Court reversed a downward exceptional sentence that the trial court based in part on progress made by a criminal defendant in her relationship with her son and her continued participation in a 12-step program for her substance abuse. 154 Wn.2d at 90. The court held these factors were not a valid basis for a downward departure under the SRA. Rather, the SRA "requires factors that serve as justification for an exceptional sentence to relate to the crime, the defendant's culpability for the crime, or the past criminal record of the defendant." *Id.* at 89. It continued, "Factors which are personal and unique to the particular defendant, but unrelated to the crime, are not relevant under the SRA." *Id.* It cited prior cases in which it held that a defendant's altruistic past and concern for others and another defendant's strong family support were not considerations that could support a downward departure. *Id.* at 97-99 (citing *State v. Freitag*, 127 Wn.2d 141, 144-45, 896 P.2d 1254 (1995); *State v. Fowler*, 145 Wn.2d 400, 411, 38 P.3d 335 (2002)).

7

Mr. Wright contends that the SRA's requirements have evolved. Yet his first argument for this evolution is from the stated purposes of the SRA, four of which he argues relate to rehabilitation—and the stated purposes on which he relies predate *Law*. In fact, three of them were *relied on* by the trial court in *Law* as support for its downward departure, which the Supreme Court reversed. *Id.* at 91.[5] *Law* reasoned that the purposes of the SRA "were factors necessarily considered by the legislature in establishing the standard sentence range and as such are impermissible justifications on which to deviate from the standard range." *Id.* at 101 (citing *State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987)). The stated purposes of the SRA do not call *Law* into question.

Mr. Wright's second argument that the law has evolved points to RCW 36.27.130, a recently enacted provision that authorizes county prosecutors to petition for resentencing of an offender "if the original sentence no longer advances the interests of justice." RCW 36.27.130(1). Mr. Wright notes that the stated legislative intent in enacting the provision is "to advance public safety through punishment, *rehabilitation*,

---

[5] Mr. Wright points to the purposes of the SRA identified in RCW 9.94A.010(4)-(7), those being to

(4) Protect the public;
(5) Offer the offender an opportunity to improve himself or herself;
(6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.

Appellant's Opening Br. at 11-12. In sentencing Law, the trial court relied on purposes (4), (5), and (6), as well as the factor at RCW 9.94A.010(3) ("be commensurate with the punishment imposed on others committing similar offenses"). *Law*, 154 Wn.2d at 91.

and restorative justice," LAWS OF 2020, ch. 203, § 1 (emphasis added). He also points out that a resentencing court that grants a prosecutor's petition for resentencing is authorized to consider "postconviction factors including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated." RCW 36.27.130(3).

What this new provision authorizes in a *prosecutor-initiated* resentencing has no application to Mr. Wright. If it has any relevance, it is that the legislature made no corresponding change to what courts can consider when sentencing or resentencing an offender under RCW 9.94A.589, which is what we are dealing with here. And the legislature's statement of intent continues to emphasize crime-based sentencing uniformity rather than individualization. LAWS OF 2020, ch. 203, § 1 ("When a sentence includes incarceration, this purpose is best served by terms that are proportionate *to the seriousness of the offense* and provide *uniformity with the sentences of offenders committing the same offense under similar circumstances*." (emphasis added)).

Mr. Wright's third argument cites federal and state cases from the last couple of decades that have found constitutionally cruel punishment when the harshest forms of punishment are imposed on a juvenile without considering hallmark features of youth, such as a juvenile's immaturity, impetuosity, and failure to appreciate risks and consequences. *E.g.*, *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *Houston-Sconiers*, 188 Wn.2d 1. The basis on which these cases have found certain forms of punishment unconstitutional has been brain science specific to the

9

immature brain—science that demonstrates children's diminished culpability and heightened capacity for change. *E.g.*, *State v. Bassett*, 192 Wn.2d 67, 89, 428 P.3d 343 (2018). Presently, in Washington, the oldest offenders able to rely on protections from punishments that are cruel as applied to youth are 18 to 20 year olds. *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 329, 482 P.3d 276 (2021) (relying on WASH. CONST. art. I, § 14). The premise of the cases is that the protections are warranted because "children are different." The premise precludes their application to Mr. Wright, whose crimes were committed when he was 28 years old.

For his final argument that the law has evolved, Mr. Wright turns to cases from other jurisdictions that instruct sentencing courts to consider postoffense conduct, including rehabilitation. This authority is not helpful because, as previously observed, setting penalties for crime is a legislative function. While other sentencing schemes may permit or encourage consideration of rehabilitation upon resentencing, Washington's *present* scheme does not. *See State v. Ramos*, 189 Wn. App. 431, 459-61, 357 P.3d 680 (2015), *aff'd*, 187 Wn.2d 420, 387 P.3d 650 (2017). Much of Mr. Wright's authority is federal, and unlike Washington law, federal sentencing law expressly provides that there can be no limitation on the information a sentencing court may consider about a defendant's background character and conduct, which includes the defendant's history and characteristics. *Id.* at 460 (citing 18 U.S.C. § 3661; 18 U.S.C. § 3553(a)(1)).

Washington's Legislature has adopted a determinate, crime-based approach to sentencing. The trial court abided by it in declining to consider Mr. Wright's rehabilitation.

*It is settled law that except in the case of juveniles, firearm enhancements cannot run concurrently as an exceptional sentence*

Mr. Wright contends that the court could have run his firearm enhancements concurrently, and erred in concluding otherwise. He relies on *McFarland* I, which held that certain firearm-related *offenses* that would otherwise run consecutively can be run concurrently as an exceptional sentence.

Mr. Wright is not the first offender to argue that exceptional sentencing should apply to presumptively consecutive firearm enhancements just as it applies to presumptively consecutive firearm-related offenses. The argument has surface appeal, particularly when supported by a couple of statements from *McFarland* I that are divorced from their context.[6] But the different treatment of *firearm enhancements* is explained by language in the exceptional sentencing statute that plainly applies to firearm-related offenses and plainly does not apply to enhancements.

---

[6] Mr. Wright quotes *McFarland* I's statements that "the [Hard Time Act] does not preclude exceptional sentences downward," and "[t]here is thus nothing in the SRA precluding concurrent exceptional sentences for firearm-related convictions." Appellant's Opening Br. at 17 (emphasis omitted) (quoting *McFarland* I, 189 Wn.2d at 54).

11

No. 37445-9-III
*State v. Wright*

At the time of Mr. Wright's crime,[7] former RCW 9.94A.310(3) (1995) encompassed sentencing enhancement provisions that were part of Initiative 159, entitled "Hard Time for Armed Crime," which the legislature enacted without amendment in 1995. LAWS OF 1995, ch. 129 (Hard Time Act). Before 1995, only one deadly weapon enhancement existed; the Hard Time Act removed "'firearm'" from the definition of "'deadly weapon,'" and created an additional, more severe firearm enhancement. *State v. DeSantiago*, 149 Wn.2d 402, 415, 68 P.3d 1065 (2003). The period of the enhancement for felonies defined under any law as a class A felony was (and remains) five years. Former RCW 9.94A.310(3), now codified at RCW 9.94A.533(3)(a). The five year period applied to all eight of Mr. Wright's felony convictions.

In 1998, the Supreme Court was called on to construe the Hard Time Act's original language that mandatory firearm enhancements "*shall not run concurrently* with any other sentencing provisions." *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 247, 955 P.2d 798 (1998) (emphasis added and omitted) (citing former RCW 9.94A.310(3)). In companion cases in which defendants were convicted of multiple armed crimes, one court imposed a sentence under which the enhancements ran consecutively to the underlying sentences, but concurrently with each other, since the underlying sentences ran concurrently. The other court imposed a sentence under which

---

[7] Mr. Wright committed the crime on February 9, 2001.

12

the enhancements ran consecutively both to their underlying sentences and to each other.

The Supreme Court interpreted the statutory language to mean that multiple sentence

enhancements must run consecutive to base sentences, but could run concurrently to each

other. *Id.* at 254.

The legislature promptly responded by amending the statute, adding the following

emphasized language to subsection (e):

> Notwithstanding any other provision of law, . . . all . . . enhancements under
> this section are mandatory, shall be served in total confinement, and shall
> run consecutively to all other sentencing provisions, *including other*
> *firearm or deadly weapon enhancements . . . .*

Former RCW 9.94A.310(3)(e) (firearm) and former RCW 9.94A.310(4)(e) (other deadly

weapon) (emphasis added); LAWS OF 1998, ch. 235, § 1.

A year later, the Supreme Court decided *Brown.* Natalie Brown was found guilty

of second degree assault with a deadly weapon: a knife. In imposing sentence, the trial

court added a 12-month deadly weapon enhancement to Brown's standard range

sentence, arriving at a total standard range of 15 to 21 months. 139 Wn.2d at 23. It then

found grounds for imposing an exceptional downward sentence of 7 months. *Id.* The

State appealed the trial court's exceptional sentence below the 12-month deadly weapon

enhancement, arguing that the court lacked discretion to reduce the enhancement. It

relied on the original "firearm enhancements . . . are mandatory" and "shall not run

13

concurrently" language of RCW 9.94A.310(4)(e), since Brown had committed her crime in 1996.

The Supreme Court agreed with the State, describing the language of former RCW 9.94A.310(4)(e) even before its 1998 amendment as "absolute" and "plain." *Brown*, 139 Wn.2d at 26-28. It held that the language providing that "'[n]otwithstanding any other provision of law, any and all deadly weapon enhancements under this section are mandatory, [and] shall be served in total confinement' . . . clearly dictates a reading by the average informed lay voter that deadly weapon enhancements are mandatory and must be served." *Id.* at 28 (alterations in original) (quoting former RCW 9.94A.310(4)(e)).

In the 22 years since *Brown* was decided, it has frequently been relied on by this court. Unlike the legislature's immediate action taken after *Charles*, it has never modified the statutory language making deadly weapon and firearm enhancements mandatory.

In 2017, the Washington Supreme Court overruled *Brown*, but explicitly only in part: only to the extent that it would apply to the sentencing of juveniles. The court explained:

> [S]entencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not. *To the extent our state statutes have*

14

*been interpreted to bar such discretion with regard to juveniles*,[5] they are overruled.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[5] *Cf. State v. Brown*, (holding that trial courts lack discretion to run sentence enhancements concurrently, even as an exceptional sentence; *no separate discussion of juveniles*).

*Houston-Sconiers*, 188 Wn.2d at 21 & n.5 (emphasis added) (citation omitted); *and see In re Pers. Restraint of Ali*, 196 Wn.2d 220, 234, 474 P.3d 507 (2020), *cert. denied sub nom. Washington v. Ali*, 141 S. Ct. 1754, 209 L. Ed. 2d 514 (2021) ("In *Houston-Sconiers*, we stated explicitly that we overruled any interpretation *that would bar such discretion with regard to juveniles*, citing to *Brown* and recognizing that *the case failed to address juveniles*."  (emphasis added)).

While *Houston-Sconiers* overruled *Brown* only as applied to juveniles, Mr. Wright argues that *Brown*, as applied to adults, was overruled by *McFarland* I.  But *McFarland* I dealt with firearm-related *offenses*, not firearm *enhancements.*

*McFarland* I was an expansion of the court's holding in *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 328, 166 P.3d 677 (2007), that presumptively consecutive sentences for serious violent crimes can run concurrently as an exceptional sentence.  The defendant argued successfully in *Mulholland* that this is suggested by the following language in RCW 9.94A.535:

> A departure from the standards in RCW 9.94A.589 (1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations in this section and may

be appealed by the offender or the state as set forth in RCW 9.94A.585 (2) through (6).

RCW 9.94A.589(1)(b) is the provision that dictates that sentences for serious violent offenses are to be served consecutively.

The State opposed Mulholland's argument for concurrent sentencing, implicitly arguing that RCW 9.94A.535 is imprecise, and the court's focus should be on a distinction between the language of subsections (a) and (b) of RCW 9.94A.589(1): subsection (a), dealing with presumptively concurrent sentencing refers to the possibility of exceptional consecutive sentencing under RCW 9.94A.535,[8] whereas subsection (b), dealing with presumptively consecutive sentencing, does not. The court held that the State's argument "fails because it pays too little heed to the plain language of RCW 9.94A.535." *Mulholland*, 161 Wn.2d at 329. Also supportive of Mulholland's argument was the language that a departure from the standards in RCW 9.94A.589(1) "may be appealed by the offender or the state," identifying the State as a potential aggrieved party. *Mulholland*, 161 Wn.2d at 330. The State would be the aggrieved party only if exceptional concurrent sentences are imposed. *Id*.

In *McFarland* I, the Supreme Court held that the same plain language that supports the possibility of exceptional concurrent sentencing for multiple serious violent offenses under RCW 9.94A.589(1)(a) supports the possibility of exceptional concurrent

---

[8] It states, in relevant part, "Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.589(1)(a).

sentencing for the multiple firearm-related offenses addressed in RCW 9.94A.589(1)(c).

*McFarland* I, 189 Wn.2d at 53. It further observed that "[b]oth are plainly encompassed

within the 'multiple offense policy of RCW 9.94A.589,'" *McFarland* I, 189 Wn.2d at 53

(quoting RCW 9.94A.535(1)(g)), whose operation can be the basis for the statutory

mitigating circumstance provided by RCW 9.94A.535(1)(g) ("The operation of the

multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is

clearly excessive in light of the purpose of this chapter, as expressed in RCW

9.94A.010.").[9]

Mr. Wright offers no suggestion how the reasoning of *Mulholland* and

*McFarland* I can extend to sentencing enhancements. RCW 9.94A.535 makes no

reference to the enhancement statute.

*Brown* remains good law as applied to adult offenders. The resentencing court did

not err when it found it did not have discretion to run the firearm enhancements

concurrently.

---

[9] *McFarland* I also addressed whether RCW 9.41.040(6), a separate consecutive sentencing provision for firearm offenses, differentiates consecutive firearm offense sentencing from its reasoning in *Mulholland.* Given the later enactment of RCW 9.94A.589(1)(c), which brought firearm-related *convictions* within the multiple offense policy of RCW 9.94A.589, the court determined that its interpretation of RCW 9.94A.589(1)(c) controlled. *McFarland* I, 189 Wn.2d at 55.

*Mandatory consecutive enhancement sentencing is not unconstitutionally cruel punishment*

Finally, Mr. Wright argues that if courts do not have discretion to run firearm enhancements concurrently, the enhancement statute amounts to cruel punishment. He cites to two lines of cases under the Eighth Amendment to the United States Constitution as supporting what he contends is an "individualization requirement" that should have applied at his resentencing, under which, "when multiple firearm enhancements alone result in a de facto life sentence, that punishment is disproportionate." Appellant's Opening Br. at 18-19. How he gets from the case law to that result is poorly explained. A law review article on which Mr. Wright relies argues for a broadened requirement of individualization at sentencing but candidly acknowledges that it "would require the [United States Supreme] Court to overrule its prior decisions." William W. Berry III, *Individualized Sentencing*, 76 WASH. & LEE L. REV. 13, 13-14 (2019). As of the winter of 2019, Professor Berry viewed the Court's overruling its narrow Eighth Amendment jurisprudence as a possibility. *Id.* ("[T]he Court's opinion in *Miller* hints at a willingness."). It would appear less likely now. *See Jones v. Mississippi*, __ U.S. __, 141 S. Ct. 1307, 1328, 209 L. Ed. 2d 390 (2021) (Sotomayor, J., dissenting) ("Today, the Court guts *Miller v. Alabama . . . .*").

The Supreme Court's opinion in *Miller* illustrates why this last argument by Mr. Wright fails. As explained in *Miller*, the cases before it "implicate two strands of

18

precedent reflecting our concern with proportionate punishment"—the same two lines of case law relied on by Mr. Wright. 567 U.S. at 470. The first are cases that have adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty. *Id.* Several of the cases in this group have specially focused on juvenile offenders, because of their lesser culpability. *Id.* Others have foreclosed imposing the death penalty for nonhomicide crimes against individuals, or on defendants with intellectual disabilities. *See id.* As a 28-year-old at the time of his crimes, making no claim of a mental disability, Mr. Wright identifies no "less culpable" class to which he belonged at the time of his crimes.

A second line of cases has "prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death." *Id.* Mr. Wright's is not a capital punishment case.

By contrast, the Supreme Court has held, as *Miller* acknowledges, that a mandatory life without parole term for possessing more than 650 grams of cocaine did not violate the Eighth Amendment, "reasoning that 'a sentence which is not otherwise cruel and unusual' does not 'becom[e] so simply because it is 'mandatory.'" *Id.* at 480-81 (alteration in original) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)). "[A] different rule, requiring individualized sentencing applie[s] in the death penalty context" but that is "'because of the qualitative difference

19

between death and all other penalties.'" *Id.* (quoting *Harmelin*, 501 U.S. at 957).  And

just as death is different, "children are different too."  *Id.* at 481.  *Harmelin*, as *Miller*

acknowledges, remains good law.

Mr. Wright and his crimes do not fall within the circumstances under which the

Eighth Amendment has categorically foreclosed certain punishments or required a

sentencing court to consider a defendant's characteristics.

Mr. Wright makes passing reference to article I, section 14 of the Washington

Constitution and the disproportionality analysis under our constitution that is required by

*State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980).[10]  He does not undertake the analysis,

however, and given the serious nature of his crimes, it would not avail him.  As pointed

out by the State, if a party fails to identify and analyze a test or factors that relevant law

applies to an issue, we will not address the analysis ourselves.  *In re Parental Rights to

D.J.S.*, 12 Wn. App. 2d 1, 42, 456 P.3d 820 (2020), *abrogated in part on other grounds

by In re Dependency of G.J.A.*, ___ Wn.2d ___, 489 P.3d 631, 648-50 nn.16 & 17 (2021).

STATEMENT OF ADDITIONAL GROUNDS

Mr. Wright raises a single additional ground for review.  He argues the court erred

when it failed to take into consideration substantial evidence of rehabilitation at

---

[10] "The *Fain* proportionality test considers (1) the nature of the offense, (2) the
legislative purpose behind the statute, (3) the punishment the defendant would have
received in other jurisdictions, and (4) the punishment meted out for other offenses in the
same jurisdiction."  *Bassett*, 192 Wn.2d at 83.

sentencing. Because the issue was adequately addressed by counsel, we will not address it further. *See* RAP 10.10(a).

Like the resentencing court, we are impressed with Mr. Wright's personal growth and the positive impact he has had on the lives of fellow prisoners who have or will have the opportunity to transition from prison to society. The resentencing court correctly assessed its discretion under the law as it now stands, however, and we have no basis for reversing and requiring a further resentencing. As earlier observed, relief for Mr. Wright must come from the executive branch or the legislature.

Affirmed.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.

21