**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56461-1-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| TIMOTHY MICHAEL KELLY, | |
| Respondent. | |

MAXA, P.J. – The State appeals the trial court's order correcting Timothy Kelly's sentence for multiple November 2006 convictions after removing two convictions for unlawful possession of a controlled substance (UPCS) from his criminal history and removing two points from his offender score pursuant to *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). Kelly had been sentenced in September 2009 to 387 months in confinement. At resentencing, the trial court reduced Kelly's sentence by 60 months by ordering that his two firearm sentencing enhancements be served concurrently with each other.

The State argues that the trial court had no authority under RCW 9.94A.533(3)(e) to run the firearm sentencing enhancements concurrently. Kelly argues that the invited error doctrine precludes the State from obtaining relief because the State did not object to the sentence in the trial court. In the alternative, Kelly argues that (1) we disregard prior cases holding that a trial court does not have the authority to run firearm sentencing enhancements concurrently; and (2) if the trial court lacked authority, we should remand for a new resentencing hearing. In a cross-

No. 56461-1-II

appeal, Kelly argues that the sentence for his November 2006 convictions should be run concurrently with his sentence for his May 2006 convictions in a different case and that the trial court should have stricken certain legal financial obligations.[1]

We hold that (1) the State is not precluded from obtaining relief under the invited error doctrine, (2) the trial court did not have authority under RCW 9.94A.533(3)(e) and prior case law to order the firearm sentencing enhancements to run concurrently, (3) Kelly is not entitled to a new resentencing hearing because any request for relief on remand would be time barred, and (4) we decline to address Kelly's cross-appeal.

Accordingly, we reverse the trial court's sentence and remand to the trial court to correct the September 2009 judgment and sentence by removing two points from Kelly's offender score but leaving unchanged Kelly's sentence, including running Kelly's two firearm sentencing enhancements consecutively to one another and to the base sentence.

FACTS

In November 2006, Kelly was convicted of two counts of first degree burglary, three counts of theft of a firearm, two counts of first degree theft, and two counts of first degree unlawful possession of a firearm. Both counts of first degree burglary included firearm sentencing enhancements of 60 months each. Kelly was 29 years old when he committed these offenses.

The trial court sentenced Kelly to a total of 338 months in confinement. But on appeal this court remanded for resentencing. On remand in September 2009, the trial court imposed an exceptional sentence below the standard range and resentenced Kelly to a total of 387 months in

---

[1] In a separate appeal, No. 56475-1-II, Kelly argues that the trial court erred in denying his request for resentencing on the May 2006 convictions.

No. 56461-1-II

confinement, with both firearm sentencing enhancements running consecutively to one another and to the sentences on the convictions. Kelly's offender score included two points for UPCS convictions.

In 2021, the trial court scheduled a post-*Blake* hearing regarding Kelly's November 2006 convictions because of the UPCS convictions included in his offender score. The trial court removed two points for the UPCS convictions from Kelly's offender score. Although Kelly's offender score decreased to a high of 23 and low of 19, the standard sentencing ranges for Kelly's convictions remained the same.

At the hearing, Kelly requested the low end of the standard sentencing ranges and for the two firearm sentencing enhancements to run consecutively, but suggested to the trial court that it had the ability to impose an exceptional sentence downward. The State requested that Kelly's sentence remain the same due to his high offender score. The State did not argue that any request for resentencing was untimely or otherwise object to the trial court resentencing Kelly.

The trial court stated that it was going to "take advantage of the exceptional sentence" that the previous sentencing court had declared, Report of Proceedings (Nov. 4, 2021) at 25, and ordered the firearm sentencing enhancements to run concurrent with one another. The court then ran one of the firearm sentencing enhancements consecutive to the base sentence. The court ruled that Kelly's sentence for the multiple convictions would remain the same as imposed in September 2009. The State did not object to the new sentence and handed forward an order for the court to sign.

On the same day, the trial court addressed Kelly's multiple May 2006 convictions in a different case, which included a conviction for UPCS. The trial court vacated the UPCS

3

No. 56461-1-II

conviction and the related sentence, but declined to resentence Kelly for the remaining May 2006 convictions.

The State appeals the trial court's order directing Kelly's two firearm sentencing enhancements to be served concurrently with one another. Kelly cross-appeals, arguing that the sentence for the November 2006 convictions should run concurrently with the sentence for the May 2006 convictions.

ANALYSIS

A.   TRIAL COURT'S AUTHORITY TO RESENTENCE

A question exists here whether the trial court had authority to resentence Kelly when the request was made more than one year after the judgment and sentence became final. RCW 10.73.090(1) requires a collateral attack on a sentence to be filed within one year after the judgment and sentence became final unless the judgment and sentence was facially invalid.

As discussed below, the fact that the removal of the two UPCS convictions from Kelly's offender score did not affect the standard range sentence meant that the sentence was not facially invalid. *See In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 767, 297 P.3d 51 (2013). However, the State did not argue in the trial court, in its appellate briefing, or at oral argument that the trial court had no authority to resentence Kelly. Therefore, we do not address this issue. Instead, we address facial validity below in the context of Kelly's request for resentencing on remand.

B.   INVITED ERROR DOCTRINE

Kelly argues that the invited error doctrine bars the State from obtaining relief on appeal. We disagree.

4

No. 56461-1-II

The invited error doctrine prohibits a party from setting up an error at trial and then challenging that error on appeal. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). To determine whether the invited error doctrine applies, we consider whether the defendant "affirmatively assented to the error, materially contributed to it, or benefited from it." *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009). For example, a defendant that erroneously requests a jury instruction may not then appeal the instruction. *State v. Tatum*, 23 Wn. App. 2d 123, 128, 514 P.3d 763, *review denied*, 200 Wn.2d 1021 (2022). But merely failing to object does not invite error. *Id.* at 128-29.

In addition, the invited error doctrine does not apply when it is shown that the sentencing court exceeded its statutory authority. *State v. Mercado*, 181 Wn. App. 624, 631, 326 P.3d 154 (2014).

Here, the State did not invite any error. The State neither set up the error, affirmatively assented to the error, materially contributed to the error, nor benefited from the error. The State requested that Kelly's sentence remain the same, which had the firearm sentencing enhancements running consecutively. When the court ruled that the firearm sentencing enhancements would run concurrently with one another, the State did not object.[2] But this alone does not invite error. *Tatum*, 23 Wn. App. 2d at 128.

Kelly argues that the State contributed to the error when it prepared and presented the order for the trial court to sign. However, this action is not comparable to a party requesting a jury instruction at trial and then appealing with a claim of instructional error. The State merely

---

[2] Kelly only asserts that the invited error doctrine should apply and does not claim that this court is precluded from reviewing this issue because the State failed to object below.

5

No. 56461-1-II

prepared an order consistent with the court's ruling. The State did not request nor advocate for the firearm sentencing enhancements to run concurrently.

Therefore, we hold that the State is not precluded from obtaining relief under the invited error doctrine.

C.      AUTHORITY TO IMPOSE CONCURRENT FIREARM SENTENCING ENHANCEMENTS

The State argues that the trial court had no authority to run the firearm sentencing enhancements concurrently. Kelly argues that the court had authority as part of an exceptional sentence. We agree with the State.

1.    Legal Principles

Interpretation of a statute is a question of law we review de novo. *State v. Abdi-Issa*, 199 Wn.2d 163, 168, 504 P.3d 223 (2022). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* To determine the legislature's intent, we first look to the plain language of the statute, considering the language of the provisions in question, how the provisions fit within the context of the statute, and the statutory scheme as a whole. *Id.* 168-69. We end the inquiry if the plain language of a statute is clear. *Id.* at 169.

Under RCW 9.94A.535[3], a court may impose an exceptional sentence below the standard range if it finds mitigating circumstances are established by a preponderance of the evidence and substantial and compelling reasons justify an exceptional sentence. The exceptional sentence imposed by the trial court at the first resentencing was based on RCW 9.94A.535(1)(g), which provides that "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive."

---

[3] Although the sections of chapter 9.94A cited in this opinion have been amended several times since the events at issue in this case, because the amendments do not affect our analysis we cite to the current versions of these sections.

6

No. 56461-1-II

However, RCW 9.94A.533(3)(e) provides that "[n]otwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements."

In *State v. Brown*, the Supreme Court held that the language of RCW 9.94A.533(3)(e) deprives sentencing courts of the discretion to impose an exceptional sentence with regard to firearm enhancements.  139 Wn.2d 20, 29, 983 P.2d 608 (1999).  Several cases in other divisions of this court have followed the holding in *Brown*.  *State v. Wright*, 19 Wn. App. 2d 37, 52, 493 P.3d 1220 (2021), *review denied*, 199 Wn.2d 1001 (2022); *State v. Mandefero*, 14 Wn. App. 2d 825, 832, 473 P.3d 1239 (2020); *State v. Brown*, 13 Wn. App. 2d 288, 291, 466 P.3d 244 (2020).

2.    Analysis

Here, the trial court did not have discretion to impose an exceptional sentence by ordering the firearm sentencing enhancements to run concurrently with one another.  RCW 9.94A.533(3)(e) plainly states that all firearm sentencing enhancements "shall run consecutively," and *Brown* held that sentencing courts do not have discretion to impose an exceptional sentence for firearm sentencing enhancements.  139 Wn.2d at 29.  We are bound to follow Supreme Court precedent.  *State v. Winborne*, 4 Wn. App. 2d 147, 175, 420 P.3d 707 (2018).  And as noted above, several Court of Appeals cases have adopted the same holding.

Kelly argues that the length of sentencing enhancements can be modified under the exceptional sentence provisions of RCW 9.94A.535(1) because that statute does not state that any sentence is mandatory.  He contrasts RCW 9.94A.535(1) with RCW 9.94A.540(1), which states that for certain offenses the "minimum terms of total confinement are mandatory and shall

7

No. 56461-1-II

not be varied or modified under RCW 9.94A.535." But RCW 9.94A.540(1) discusses mandatory minimum terms, not whether a sentence should be applied concurrently or consecutively.

Kelly also cites to *State v. Conover*, 183 Wn.2d 706, 713, 355 P.3d 1093 (2015). In *Conover*, the Supreme Court held that school bus route stop enhancements may be run concurrently with one another because RCW 9.94A.533(6) does not explicitly say that the enhancements must run consecutively to one another. 183 Wn.2d at 712-15. But *Conover* compared section (6) with section (3)(e), which *does* explicitly state that firearm sentencing enhancements shall run consecutively to one another. *Id.* Further, the court "interpreted . . . RCW 9.94A.533 to require that 'all firearm and deadly weapon enhancements are mandatory and, where multiple enhancements are imposed, they must be served consecutively to base sentences and to any other enhancements.' " *Id.* at 714 (quoting *State v. DeSantiago*, 149 Wn.2d 402, 416, 68 P.3d 1065 (2003)).

In addition, the language of former RCW 9.94A.310(3)(e) (now codified as RCW 9.94A.533(3)(e)) stated that all mandatory firearm sentencing enhancements "shall not run concurrently with any other sentencing provisions." In 1998, the Supreme Court interpreted this language to mean that multiple firearm sentencing enhancements could run concurrently with one another. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 254, 955 P.2d 798 (1998). The legislature then promptly amended former RCW 9.94A.310(3)(e) to state that all mandatory firearm sentencing enhancements "shall run consecutively to all other sentencing provisions, *including other firearm or deadly weapon enhancements*." (Emphasis added.)

The Supreme Court decided *Brown* a year later. But unlike the immediate action taken after *Charles*, the legislature has not further modified the statutory language regarding mandatory firearm enhancements.

8

No. 56461-1-II

Kelly also cites to Justice Madsen's concurring opinion in *State v. Houston-Sconiers*, 188 Wn.2d 1, 12-13, 391 P.3d 409 (2017). Justice Madsen stated that "the discretion vested in sentencing courts under the Sentencing Reform Act of 1981 (SRA) [chapter 9.94A RCW] includes the discretion to depart from the otherwise mandatory sentencing enhancements when the court is imposing an exceptional sentence." *Houston-Sconiers*, 188 Wn.2d at 34 (Madsen, J., concurring). Kelly claims that this statement applies to adult defendants.

However, even if we were to agree in principle with Justice Madsen's concurrence, *Houston-Sconiers* overruled *Brown* with regard to juveniles only. *Id.* at 18-21. In *Houston-Sconiers*, the Supreme Court held that in order to comply with the Eighth Amendment, sentencing courts must have discretion to consider "mitigating circumstances associated with the youth of any juvenile defendant." *Id.* at 21. But Kelly was 29 years old when he committed the crimes at issue in this appeal, and *Houston-Sconiers* does not apply to him.

Therefore, we hold that the trial court erred in ordering the firearm sentencing enhancements to run concurrently with one another. Under RCW 9.94A.533(3)(e), the firearm sentencing enhancements must be run consecutively to one another and to the base sentence.

D.      REQUEST FOR NEW RESENTENCING HEARING

Kelly argues in the alternative that he is entitled to a new resentencing hearing to give the trial court another opportunity to reduce Kelly's sentence. The State argues that resentencing is unavailable on remand because any request for resentencing would be untimely under RCW 10.73.090(1). We agree with the State.

A collateral attack is "any form of postconviction relief other than a direct appeal." RCW 10.73.090(2). Therefore, resentencing on remand would constitute postconviction relief.

9

No. 56461-1-II

Under RCW 10.73.090(1), a defendant may not collaterally attack their judgment and sentence "more than one year after the judgment becomes final if the judgment and sentence is valid on its face" unless one of the exceptions in RCW 10.73.100 applies. RCW 10.73.100 lists six exceptions to the one-year time limit. Unless a defendant shows that the judgment and sentence is facially invalid or one of the RCW 10.73.100 exceptions applies, a collateral attack is time-barred. *In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 532-33, 55 P.3d 615 (2002).

Kelly does not claim that any of the RCW 10.73.100 exceptions apply here. Therefore, a collateral attack on remand would be time barred unless the judgment and sentence is facially invalid.

A judgment and sentence is facially invalid only if the trial court imposes a sentence that was not authorized under the SRA. *Toledo-Sotelo*, 176 Wn.2d at 767. An incorrect offender score does not render a judgment and sentence facially invalid if the trial court accurately calculated the standard sentencing range and the sentence actually imposed is within the correct SRA-mandated standard range. *Id.* at 768.

Here, although Kelly's offender score changed due to his UPCS convictions being removed from his offender score, his standard sentencing ranges did not change. Therefore, the trial court in September 2009 accurately calculated the standard sentencing range and his sentence still was within the SRA-authorized sentencing range. In this situation, the judgment and sentence is not facially invalid. *See id.* at 768-69.

A recent order issued by a panel of the Supreme Court is consistent with this reasoning. Order, *In re Pers. Restraint of Richardson*, No. 101043-5 (Wash. Nov. 14, 2022). On discretionary review, the court held:

> Richardson's judgment and sentence is not facially invalid for purposes of exempting the personal restraint petition from the time limit. Removing from the

10

No. 56461-1-II

> offender score the prior conviction for attempted possession of a controlled substance reduces the score from 10 to 9, but at a score of 9 Richardson's standard range remains 471 to 608 months. *See* RCW 9.94A.510 (highest standard range reached at offender score of 9 or more). The superior court imposed a sentence within that range and therefore the sentence was authorized. In this circumstance, the judgment and sentence is not facially invalid. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 136, 267 P.3d 324 (2011); *In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 768-70, 297 P.3d 51 (2013).

Order at 2.[4]

Because Kelly's judgment and sentence remained facially valid after the UPCS convictions were removed from his offender score and no RCW 10.73.100 exceptions exist, his request for resentencing on remand would be time barred. Therefore, we hold that Kelly is not entitled to resentencing on remand. Instead, the trial court must be directed to reinstate the September 2009 sentence, including running the firearm enhancements consecutively.

E.    KELLY'S CROSS-APPEAL

Kelly argues in his cross-appeal that the trial court should have resentenced him on his May 2006 convictions and that the sentence for those convictions must run concurrently with the new sentence in this case. He also argues that the trial court erred in failing to address whether legal financial obligations imposed in the November 2009 sentence should be stricken in light of current law. However, as discussed above, Kelly is not entitled to resentencing on remand for his November 2006 convictions. Therefore, we do not address these arguments.

CONCLUSION

We reverse the trial court's sentence and remand to the trial court to correct the September 2009 judgment and sentence by removing two points from Kelly's offender score but

---

[4] The Supreme Court has ordered that this order will be published in the Washington Reports. Order, *In re Pers. Restraint of Richardson*, No. 101043-5 (Wash. Mar. 10, 2023).

11

No. 56461-1-II

leaving unchanged Kelly's sentence, including running Kelly's two firearm sentencing enhancements consecutively to one another and to the base sentence.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
CHE, J.