**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58126-4-II |
| Respondent, | |
| v. | |
| JESSE MICHAEL COOK, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Jesse Michael Cook appeals his convictions of unlawful possession of methamphetamine with intent to distribute and unlawful possession of fentanyl with intent to distribute, the two firearm sentencing enhancements associated with those convictions, and his sentence. The drugs and the firearm were found during the search of a vehicle that Cook was driving but did not own.

We hold that (1) the evidence was sufficient to establish that Cook had constructive possession of the drugs, (2) the evidence was sufficient to establish that Cook was armed at the time of the offenses, (3) the trial court did not err in determining that it did not have the discretion to impose an exceptional sentence by running the firearm sentencing enhancements concurrently to each other and to the sentences for the substantive offenses, and (4) defense counsel did not provide ineffective assistance of counsel by failing to request an exceptional sentence on an impermissible basis. Accordingly, we affirm Cook's convictions, firearm sentencing enhancements, and sentence.

FACTS

*Background*

On February 7, 2023, Napavine police officer Taylor Nichols stopped the vehicle that Cook was driving after observing that the vehicle's taillights were not illuminated. Cook was the sole occupant of the vehicle.

Cook told Nichols that he had borrowed the vehicle from a friend. After Nichols learned that Cook's driver's license had been suspended, Nichols cited Cook for driving on a suspended license. Nichols advised Cook that he either could have a licensed driver retrieve the vehicle or leave on foot. Cook took some items from the vehicle and walked away.

After Cook left, Nichols contacted a K9 unit. The drug dog unit alerted to the vehicle's driver's and passenger's doors. The K9 officer also observed drug paraphernalia in plain view in the back seat of the vehicle. Nichols obtained a search warrant for the vehicle.

During the vehicle search, Nichols removed the ashtray from the vehicle's center console and found a loaded .40 caliber handgun inside the dashboard. Nichols later testified that the ashtray was easily removed from the dashboard.

In the back of the vehicle's trunk behind a subwoofer, Nichols found two small scales, one of which had methamphetamine residue on it; 21.05 grams of methamphetamine; 50 to 100 fentanyl pills weighing 10.01 grams; heroin; and some packaging materials.

Later that evening, Nichols contacted Cook and informed him that he was being charged with unlawful possession of a controlled substance with intent to deliver and unlawful possession of a firearm. Cook did not deny any of the allegations. He only expressed concern about what class felony each of the charges would be. Cook also thanked Nichols for "messing up his life." Rep. of Proc. (RP) at 159.

Cook was arrested at his home in Tacoma the next day. At Cook's home, officers discovered a box of .40 caliber ammunition.

While booking Cook into the Lewis County jail, Nichols told Cook that he had almost not investigated the vehicle further because he thought that Cook had walked away with any potential evidence. When Nichols told Cook that he had not intended to stop Cook from walking away, Cook responded, "Wish I would have f***ing known that." RP at 164. After Cook repeated this statement a second time, Nichols told Cook that he was confused about what Cook meant. Cook explained that if he had known Nichols would not have stopped him then they would not have been at the jail. Nichols believed that Cook was suggesting that he would have taken evidence from the car if he had known he would not have been prevented from leaving.

The State charged Cook with unlawful possession of a controlled substance (methamphetamine) with intent to deliver and unlawful possession of a controlled substance (fentanyl) with intent to deliver.[1] The State also alleged that Cook had committed these offenses while armed with a firearm.

*Trial*

At trial, the State's witnesses testified as described above. Cook was the only defense witness.

Cook testified that he had borrowed the vehicle from a friend so he could visit his children in Oregon. He stated that he and his father picked up the car from his friend's boyfriend in the Tacoma area and that Cook drove the vehicle to Oregon. Nichols stopped him on his way home from Oregon the next evening.

---

[1] The State also charged Cook with possession of a stolen firearm, but that charge was dismissed.

Cook testified that he was unaware that the firearm or the drugs were in the vehicle. He admitted to having opened the passenger side door. Cook also denied having any firearms in his home.

The jury found Cook guilty of unlawful possession of methamphetamine with intent to deliver and unlawful possession of fentanyl with intent to deliver. The jury also found that Cook was armed with a firearm when he committed each of these offenses.

*Sentencing*

At the April 2023 sentencing hearing, the parties and the trial court assumed that each drug offense was a level 2 drug offense and that the standard sentencing range for each offense was 12 months plus one day to 20 months. Because the court found that the two offenses constituted same criminal conduct, the offender score for each offense was 0 points.

The trial court stated that because of Cook's low offender score, it was imposing low-end sentences of 12 months plus one day plus 36-months for the firearm sentencing enhancement. The court ran the two sentences, including the firearm enhancements, concurrently for a total sentence of 48 months plus one day.

*Resentencing*

The Department of Corrections (DOC) subsequently notified the parties that the April 2023 sentence was incorrect. After the parties reviewed the sentence, they determined that the DOC was correct, and the trial court held a resentencing hearing.

The State advised the trial court that the original sentence was incorrect because the parties and the court had erroneously concluded that each drug offense was a level 2 offense. But under RCW 9.94A.518,[2] the firearm enhancements raised the offenses to level 3 offenses.

The State further stated that as level 3 offenses, the standard range for each offense was 51 to 68 months rather than 12 months plus one day to 20 months. The State also asserted that although the two counts were determined to be same criminal conduct by agreement of the parties, case law required that the two sentencing enhancements be served consecutively.

Based on this new information, the State requested a sentence of 51 months on each count to run concurrently and two 36 month firearm sentencing enhancements to run consecutively to each other and to the 51 month sentence. The resulting total term of confinement would be 123 months.

Cook agreed that the proper sentencing range was 51 to 68 months, but he argued that he should receive only one firearm enhancement because the two offenses were same course of conduct and only one firearm was involved. The State responded that if the trial court ran the firearm enhancements concurrently, it would require an exceptional sentence downward.

The trial court imposed a new sentence of 51 months on each count and two 36 month firearm sentencing enhancements. The court ran the two 51 month sentences concurrently and the two 36 month firearm enhancements consecutive to the sentences for the substantive offenses and to each other, for a total sentence of 123 months.

Cook appeals his convictions, the firearm sentencing enhancements, and his sentence.

---

[2] The legislature amended this statute in 2023. LAWS OF 2023, ch. 66 §2. Because this amendment did not change the relevant portion of the statute, we cite to the current version.

ANALYSIS

A.     SUFFICIENCY OF THE EVIDENCE

Cook argues that the State failed to present evidence sufficient to prove that (1) he

possessed the methamphetamine and fentanyl found in the vehicle, or (2) he was armed with the

firearm during the commission of the crimes.  We disagree.

1.    Legal Principles

The test for determining sufficiency of the evidence is whether, after viewing the

evidence in the light most favorable to the State, any rational trier of fact could have found guilt

beyond a reasonable doubt.  *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).

In a sufficiency of the evidence claim, the defendant admits the truth of the evidence, and we

view the evidence and all reasonable inferences drawn from that evidence in the light most

favorable to the State.  *Id*. at 265-66.  Credibility determinations are made by the trier of fact and

are not subject to review.  *Id*. at 266.  And circumstantial and direct evidence are equally reliable.

*Id*.

2.    Possession of Controlled Substances

Cook argues that the evidence was insufficient to establish that he possessed the

methamphetamine and fentanyl.  We disagree.

a.    Legal Principles

To prove unlawful possession of a controlled substance with intent to deliver, the State

had to prove, among other elements, that Cook possessed the drugs in question.  RCW

69.50.401(1).  When possession is an element of the charged offense, possession can be

established if the State proves that the defendant had either actual possession or constructive

possession of the item. *State v. Listoe*, 15 Wn. App. 2d 308, 326, 475 P.3d 534 (2020). Actual possession, which requires physical custody of the item, is not alleged here.

Constructive possession occurs when a person has dominion and control over an item. *Id.* To determine whether sufficient evidence proves that a defendant had dominion and control over an item, we examine the totality of the circumstances and a variety of factors. *Id.* Aspects of dominion and control include (1) whether the defendant could immediately convert the item to his or her actual possession, (2) the defendant's physical proximity to the item, and (3) whether the defendant had dominion and control over the premises where the item was located. *Id.* at 326-27. A vehicle is considered a "premises." *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008).

But mere proximity to an item is not enough to establish constructive possession. *Listoe*, 15 Wn. App. 2d at 327. Similarly, the defendant's knowledge of the item's presence on a premises alone is insufficient to show constructive possession. *Id.*

Consistent with these rules, the trial court gave the following jury instruction:

> Possession means having a substance in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance.
>
> . . . .
>
> In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the immediate ability to take actual possession of the substance, whether the defendant had the capacity to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located. No single one of these factors necessarily controls your decision.

Clerk's Papers (CP) at 63.

b. Analysis

Cook was the sole occupant and driver of the vehicle in which the drugs were found. The jury was instructed that one factor that they could consider in determining dominion and control over the drugs was "whether the defendant had dominion and control over the premises where the substance was located." CP at 63. This means that a jury could infer constructive possession of items on the premises from the defendant's dominion and control over the premises. *See State v. Shumaker*, 142 Wn. App. 330, 334, 174 P.3d 1214 (2007). Therefore, this factor supported a finding that Cook had dominion and control over the drugs.

In addition, other evidence demonstrated that Cook had control over the drugs. The drug dog alerted to the driver's door and passenger's door of the vehicle, and Cook touched both of these locations. Taking this evidence in the light most favorable to the State, this evidence supports the conclusion that Cook had had physical control of drugs at the time he was in contact with the vehicle. Cook also did not appear surprised when he initially was informed that he was going to be charged, suggesting that he was aware of what was in the vehicle. And Cook later made statements to Nichols to the effect that if he had realized Nichols would have let him leave the scene, Nichols would not be in jail. This statement suggests that Cook knew what was in the vehicle and could have easily accessed the drugs to remove them before he left.

Considering this evidence in the light most favorable to the State, we hold that the evidence was sufficient to establish that although the drugs were in the trunk, Cook had dominion and control over the drugs.

3. Armed with a Firearm

Cook argues that the State failed to provide sufficient evidence to establish that he was armed with a firearm during the commission of the offenses. We disagree.

a. Legal Principles

For purposes of firearm sentencing enhancements, to establish that the defendant was armed "the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018). Mere "presence, close proximity, or constructive possession of a weapon at the scene of a crime is, by itself, insufficient to show that the defendant was armed for the purpose of a firearm enhancement." *Id.* at 825.

But the defendant is not required " 'to be armed at the moment of arrest to be armed for purposes of the firearms enhancement,' and the State 'need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible, so long as it was at the time of the crime.' " *Id.* at 826-27 (quoting *State v. O'Neal*, 159 Wn.2d 500, 504-05, 150 P.3d 1121 (2007)). In addition, to establish that there was a nexus among the defendant, the weapon, and the crime, we "look[ ] at the nature of the crime, the type of weapon, and the circumstances under which it was found." *Sassen Van Elsloo*, 191 Wn.2d at 827.

b. Analysis

Cook argues that the State failed to prove a nexus between the firearm and himself or the firearm and the crimes. He contends that the State failed to establish a nexus between himself and the firearm because he testified that (1) he did not own the vehicle and others drove the vehicle, (2) he did not know that the firearm was in the vehicle because it was hidden and not in plain view, and (3) the firearm was not his and he was unaware that it was in the vehicle. He also notes that there was no fingerprint or DNA evidence linking the firearm to him.

However, although the firearm was hidden from view, it was located in the center console immediately next to Cook while he was transporting the drugs. Nichols testified that the firearm was accessible by merely removing the ashtray and that the ashtray was easily removed. This evidence creates a reasonable inference that at the time Cook was transporting the drugs, the firearm was easily accessible and readily available to him. In addition, there was evidence that the ammunition found in Cook's home was the same caliber as the firearm found in the vehicle. This evidence creates a reasonable inference that the firearm belonged to Cook and therefore that he knew that the firearm was in the vehicle. Taken in the light most favorable to the State, the evidence provided the required nexus between Cook, the firearm, and the offenses.

Considering this evidence in the light most favorable to the State, we hold that the evidence was sufficient to establish that Cook was armed with a firearm at the time of his offenses.

B.    SENTENCING ISSUES

1.    Consecutive Sentences for Firearm Enhancements

Cook argues that the trial court abused its discretion at sentencing because the court failed to understand that it had the discretion to impose a 36 month exceptional sentence by running the firearm sentencing enhancements concurrently to each other and to the sentences on the substantive offenses instead of consecutively. We disagree.

RCW 9.94A.533(3)(e) states, "Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements." In *State v. Brown*, the Supreme Court held that based on the language of RCW 9.94A.533(3)(e), sentencing courts do not have discretion to impose an exceptional sentence

10

with regard to deadly weapon enhancements. 139 Wn.2d 20, 29, 983 P.2d 608 (1999). In *State v. Kelly*, this court held that RCW 9.94A.533(3)(e) and *Brown* preclude a trial court from imposing an exceptional sentence by ordering the firearm sentencing enhancements to run concurrently with one another. 25 Wn. App. 2d 879, 887-89, 526 P.3d 39 (2023), *review granted*, 2 Wn.3d 1001 (2023). Several cases in other divisions of this court also have followed the holding in *Brown*. *E.g.*, *State v. Wright*, 19 Wn. App. 2d 37, 52, 493 P.3d 1220 (2021), *review denied*, 199 Wn.2d 1001 (2022).

Cook relies on *In re Personal Restraint of Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007), and *State v. McFarland*, 189 Wn.2d 47, 399 P.3d 1106 (2017). In *Mulholland*, the Supreme Court held that trial courts have discretion to impose concurrent sentences for multiple serious violent offenses based on its interpretation of RCW 9.94A.589(1) and RCW 9.94A.535. 161 Wn.2d at 327-31. But the court did not address RCW 9.94A.533(3)(e) or firearm enhancements. In *McFarland*, the Supreme Court held that a trial court has discretion to impose concurrent sentences for multiple firearm-related convictions. 189 Wn.2d at 53-55. But this case involves firearm enhancements, not firearm-related convictions.

We conclude that the trial court did not have the discretion to impose concurrent sentences for Cook's firearm enhancements.

### 2. Ineffective Assistance of Counsel

Cook argues that he received ineffective assistance of counsel because defense counsel failed to argue that under *Mulholland* and *McFarland* the trial court could impose an exceptional sentence downward by running the firearm sentencing enhancements concurrent to each other and to the sentences for the substantive offenses. We disagree.

To prevail on an ineffective assistance of counsel claim Cook must show both that (1) defense counsel's representation was deficient and (2) the deficient representation was prejudicial. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.*

As discussed above, the trial court did not have the discretion to impose an exceptional sentence by running the firearm enhancements concurrently to each other or to the sentences for the substantive offenses. Defense counsel did not provide deficient representation by failing to argue that the court could impose an exceptional sentence on a legally impermissible basis.

Accordingly, Cook's ineffective assistance of counsel claim fails.

### CONCLUSION

We affirm Cook's convictions, firearm sentencing enhancements, and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
VELJACIC, A.C.J.

_____
GLASGOW, J.

12